### TOM PRICE v. THE STATE.

#### No. 1488. ·Decided January 3, 1912.

#### 1.—Adultery—Accomplice—Corroboration—Insufficiency of the Evidence.

Where, upon trial of adultery by having habitual carnal intercourse without living together, etc., the State's testimony did not corroborate the prosecuting witness' testimony in a single circumstance, and the reputation of prosecutrix for truth and veracity was shown to be bad, etc., the conviction could not be sustained.

#### 2.—Same—Charge of Court—Accomplice.

The statute in rape cases which excludes a female under fifteen years of age from the law of accomplice, does not apply in the case of adultery where the female is under the age of consent, and the court should submit a charge on accomplice testimony.

Appeal from the County Court of Franklin. Tried below before the Hon. G. E. Cowan.

Appeal from a conviction of adultery; penalty, a fine of $100.

The opinion states the case.

*R. T. Wilkinson,* for appellant.—On the court's failure to charge on accomplice testimony: Donley v. State, 44 Texas Crim. Rep., 428, 71 S. W. Rep., 958; Wiley v. State, 26 S. W. Rep., 723; Merritt v. State, 10 Texas Crim. App., 402.

*C. E. Lane,* Assistant Attorney-General, for the State.—On question of accomplice: Owens v. State, 35 Texas Crim. Rep., 345; Donley v. State, 44 Texas Crim. Rep., 428.

PRENDERGAST, JUDGE.—On April ·11, 1911, the appellant was indicted for adultery, charging the offense to have been committed on June 25, 1910, by the appellant having habitual carnal intercourse without living together with one Willie Hanks, a woman, appellant being lawfully married to another person then living. The case was properly transferred to the County Court and there tried on July 12,

1911, the appellant convicted and his punishment fixed at a fine of $100.

It is unnecessary to discuss but one question in this case, and that is, the sufficiency of the evidence to sustain the conviction.

The statement of facts shows this state of case: The appellant was a married man, but separated from his wife many years before the offense charged in this case. For about ten years prior to the date of the charged offense he had lived with the prosecuting witness' mother, and the prosecuting witness lived with her mother and appellant. When the appellant first began living with her mother, prosecuting witness was a child only five or six years old, and she lived with them until she married Red Luther on November 25, 1910.

The State's case is this: The prosecuting witness testified that she was fifteen years old in June, 1910, which we construe to mean June 1, 1910; that the appellant first had intercourse with her on or about April 1, 1910; this occurred in the kitchen when her mother was away from home. The next time he had intercourse with her was at the cow pen when she went down there to milk. · The next time in the watermelon patch and the next time down on the branch. These were the only times she could remember, except there were other times in the watermelon patch. She could not and did not give the date of any of these acts except the first one, other than that they were between about April 1, 1910, and November 25, 1910, the day she was married. She further testified that the appellant had intercourse with her twelve or more times between about April 1 and November 25, 1910, without fixing in any way the time or the place of any of the acts other than as stated above. She claimed to have told her mother, but that her mother was not living and doing right, and paid no attention to her. She admitted, on cross-examination, that she had told appellant after he was indicted that if he would give her a pony which she claimed as hers she would not testify against him, though she intended to testify and that she was "laying" for him; that she used this method to try to get him to give her a pony which she claimed as hers. She testified that she gave birth to a child five and a half months after she married her husband, Red Luther.

She did not testify that she did not have intercourse with any other person before she married her husband. There was no proof whatever to corroborate her on any of her testimony.

She admitted that her husband, in the summer of 1910, lived at appellant's, where she and her mother lived, for about one month or more.

The State's witness McCullers testified that the appellant and the prosecuting witness' mother and the prosecuting witness lived together for several years before this offense was charged; that while appellant was the only man who lived with the prosecuting witness'

mother and said witness, that there were plenty of men in the neighborhood. He further testified that Red Luther, the prosecuting witness' husband, did live with appellant about one month or more during the summer of 1910.

Red Luther, the prosecuting witness' husband, also testified that he lived one month during the summer of 1910, with the appellant, who lived with the prosecuting witness' mother and the prosecuting witness. He admits also that his wife told appellant that if he would let her have a certain pony she claimed was her's that she would not come to court and appear against him at all; that his wife was pregnant at the time he married her, though he did not know it at that time, and that she gave birth to a child five and a half months after they were married.

Appellant proved by Charley Neal, a half-brother of the prosecuting witness, that her general reputation for truth and veracity was bad. He also proved the same thing by Tom Ramsey. Ramsey also testified he heard prosecuting witness offer to refuse to testify against the appellant if he would give her a pony.

Will Samuels also testified that the general reputation of the prosecuting witness for truth and veracity was bad. He further testified that the prosecuting witness and her husband some time after the appellant was indicted asked him to go to the appellant and tell him that they would leave the country and not appear against him if he would give them a wagon and team. He told the appellant this and the appellant sent word by him to them that he would not do it. Neither the prosecuting witness nor her husband denied this.

The appellant himself testified, denying that he had ever had intercourse with the prosecuting witness at any time or place; that he had her mother living with him and keeping house for him for about ten years continuously before this prosecution, and that the prosecuting witness had lived with her mother and him during all this time, she being a child only five or six years of age when he first took them to live with him. He also swore that his brother who had been dead four years at the time of the trial had "kept" the prosecuting witness for some time before his death; that since then young men had been going to see her and he thought she was having sexual intercourse with them during the year 1910; that her husband, Red Luther, lived with him some time before they were married, during the summer of 1910. He also testified that her general reputation for truth and veracity was bad; that she had tried to make him give her a horse, and that if he did she would not appear against him. He claimed the horse as his own and that she had no claim to it. He also testified that she said to him that if he did not give her this horse she was going to "pull" him and that he still refused to give her the horse. He also testified that she went before the grand jury and tried to get a bill against him for rape on her; she testified to the same thing, and she further testified that

the grand jury refused to indict him for rape, but did indict him for adultery with her. Appellant also testified that she sent Samuels, the witness whom he introduced, to him and offered to leave the country if he would give them a wagon and team and that they would not testify against him; that he refused to do this. Appellant further testified that he caught her and Charley Goode out at the hog pen one time, and that his brother also kept her awhile the year before the trial and that he stayed there at the time three or four days.

This is in substance the whole of the testimony. It will be seen thereby that there was not a single circumstance corroborating the prosecuting witness' testimony. On the contrary, her general reputation for truth and veracity was shown to be bad. By her own testimony she tried to get the grand jury to indict him for rape, which the grand jury refused to do. She then repeatedly offered not to testify against him if he would give her a pony, and at another time if he would give her and her husband a wagon and team which he refused to do. She did not even testify that no other person had had sexual intercourse with her. On the contrary, it was shown and not disputed by her, that her husband lived at the appellant's about one month during the summer of 1910, at which time he could have had sexual intercourse with her and have been the father of her child thereafter born, as the period of gestation between the time he lived there in the summer and the time she gave birth to the child corresponded. Other persons were shown, and not disputed by her, to have had an opportunity during this same time to have been the father of the child. As we take it and understand it, there is not a single circumstance or the testimony of a single witness that corroborated the testimony of the prosecuting witness and it is our opinion that the testimony is wholly insufficient to sustain the verdict.

The court charged the jury, among other things, that when the offense of adultery had been committed, both parties were guilty, although only one of them was married. This is statutory. He also charged that the prosecuting witness would be an accomplice if the offense is shown to have been committed after she was fifteen years of age, but that she would not be an accomplice if the offense was committed before she was fifteen years of age. The appellant complained that this charge was error and he asked a charge to the effect that she was an accomplice whether the offense was committed before or after she became fifteen years of age and that the jury could not convict, unless her testimony was corroborated. This matter, however, is not presented to this court in such a way that we could reverse the case on that account, but as we reverse it on another ground, it is proper that we should pass upon this question so that the matter may be properly presented in another trial, if one should be had.

It seems that the theory of the lower court was that the prosecut-

ing witness was not an accomplice if the offense was committed before she was fifteen years of age, doubtless basing this upon the statute of rape of a girl under fifteen years of age. While it is true that under the rape statute, sexual intercourse with a girl under fifteen years of age, even though with her consent, does not make her an accomplice when the charge is rape, and even though she consented, it is no defense. This is by reason of our rape statute. This does not apply, however, when the charge is living in adultery, even though the woman, or female, is under the age of fifteen years. Hence, upon another trial under the indictment in this case, if the prosecuting witness should testify the court should give a proper charge stating that she is an accomplice and must be corroborated as required by our statute and the decisions thereunder on the subject of corroboration.

For the error of not granting a new trial because of the insufficiency of the evidence and the want of corroboration of the prosecuting witness, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*