### FRED KOGER v. THE STATE.

#### No. 2920. Decided April 1, 1914.

**1.—Adultery—Fornication—Insufficiency of the Evidence.**

Where, upon trial of adultery and fornication, the evidence was insufficient to support the conviction, the judgment must be reversed and the cause remanded.

**2.—Same—Charge of Court—Circumstantial Evidence.**

Where, upon trial of adultery and fornication, the court gave a full charge on circumstantial evidence, there was no error in refusing defendant's special charge to the effect that suspicious circumstances and familiarity are not sufficient to prove adultery or fornication by habitual carnal intercourse without actual proof of an act of carnal intercourse.

**3.—Same—Evidence—Opinion of Witness.**

Upon trial of adultery and fornication, it was improper to permit a witness to testify that he thought defendant's talk to him referred to the witness's talk with defendant's alleged paramour.

**4.—Same—Evidence—Weight of Testimony.**

Where the objection went simply to the weight of the testimony admitted, and the testimony was otherwise admissible, there was no error.

**5.—Same—Double Punishment—Judgment—Information.**

Where the prosecution on trial of fornication sought to obtain a double punishment on account of a previous conviction for the same offense, the former judgment of conviction was admissible in evidence, but the State should have

introduced the information upon which said judgment was based so as to iden-
tify the offense. Following Muckenfuss v. State, 55 Texas Crim. Rep., 216.

**6.—Same—Argument of Counsel—Plea of Guilty—Confessions.**

See opinion with reference to argument of counsel on defendant's plea of
guilty and confessions in the former conviction for the same offense.

Appeal from the County Court of Ellis. Tried below before the Hon.
J. C. Lumpkins.

Appeal from a conviction of adultery and fornication; penalty, a
fine of $250.

The opinion states the case.

*W. H. Fears,* for appellant.—On question of insufficiency of the evi-
dence: Boswell v. State, 48 Texas Crim. Rep., 47; Collins v. State, 46
id., 550; Quinn v. State, 51 id., 155; Wallace v. State, 63 id., 611; Green
v. State, 53 id., 540; Sadler v. State, 52 id., 439; Manuel v. State, 45
id., 96; Eaton v. State, 60 id., 429; Watson v. State, 62 id., 620.

On question of opinion of witness as to suspicion: Dowell v. State,
58 Texas Crim. Rep., 482.

On question of argument of counsel: Taylor v. State, 50 Texas Crim.
Rep., 560; Daniels v. State, 71 Texas Crim. Rep., 662, 160 S. W. Rep.,
707.

*C. E. Lane,* Assistant Attorney General, for the State.—On question
of proving adultery by circumstantial evidence: Mabry v. State, 54
Texas Crim. Rep., 449; McKnight v. State, 6 Texas Crim. App., 158;
Hilton v. State, 53 S. W. Rep., 113; Green v. State, 53 Texas Crim. Rep.,
540; Sadler v. State, 52 id., 439.

PRENDERGAST, PRESIDING JUDGE.—The complaint and informa-
tion is in several counts, some charging adultery in that the woman was
married and appellant was not married, and in another charging forni-
cation in that both were unmarried. And for the purpose of authorizing
the jury to find double punishment, it was alleged that previously ap-
pellant had been convicted of fornication with said woman.

Appellant earnestly contends that the evidence is insufficient to sustain
the verdict. We will, therefore, give substantially the testimony which
was as follows:

The State proved by Armon Yates, deputy sheriff, Jim Ham, a con-
stable, and Sam Bass, the city night watchman, that they knew defend-
ant Fred Koger, that he was a young man nineteen or twenty years old
who resided with his father in Waxahachie. That they knew Arnice
Watson, a woman who was a servant in the family of Dr. Ferguson, and
lived in a servant house on his place at West End and about one mile
from the courthouse. That they had information that Fred Koger was
going to see Arnice Watson, and in December, 1912, they watched the
house of Arnice Watson some five or six nights; that they hid themselves

near the barn and close to the house occupied by said Arnice Watson; that in December, 1912, they saw defendant twice come to the house of Arnice Watson. The first time he was on horseback, and did not get off of the horse; that Arnice Watson went out to the fence and they talked awhile; that defendant then reached over the fence and hugged and kissed Arnice Watson; that some five or six nights later when they got out there defendant was standing in front of the door of the house and Arnice Watson was standing in the door of her house; that they talked a few minutes, and defendant walked off and went down the railroad toward town. That again in January, 1913, they watched the house some five or six nights and saw defendant again go to the house. That on each occasion he was on horseback, and did not get off his horse; that once he reached over the fence and hugged and kissed Arnice Watson, then he rode off towards town; that they watched the house of Arnice Watson many nights, but did not see defendant any more until Sunday night the 30th day of March, 1913, when said witnesses in company with Sheriff A. W. Wilson went out to the house of Arnice Watson, Jim Ham went to a window, looked in, saw Arnice Watson in bed, defendant sitting on the side of the bed talking to her; that there was also another woman in the room; that the woman left, and pretty soon defendant patted Arnice Watson on the breast, kissed her and at once went out the door where he was arrested. Jim Ham testifies that, while he was looking in the window, he found out from the conversation that Arnice Watson was sick. Sheriff Wilson testified that he filed the complaint on which defendant was arrested. They all testified that after defendant was arrested he said he did not want to go to jail, and asked that the sheriff take him to his father's home that he might make bond; that the sheriff refused, saying he was going to take him to jail—that on the way defendant broke loose and ran off, but they went right on to his father's home and in a few minutes defendant came, and they arrested him, and would not let him go into the house to see his father, but took him to jail. Jim Ham testified he heard Arnice Watson was married. Sam Bass testified he had known her several years, and no one lived with her as her husband during that time. Buddy Quaite testified that about six months before, one dark night he was driving a car and saw defendant and Arnice Watson in a buggy; that he knew them and that was the only time he ever saw them together. Robert Phillips testified that one night about three months before he passed a man and a woman in a buggy. He could not say as to the woman, but he believed the man was Fred Koger. Tom Stewart testified that one evening about dusk he met Fred Koger and Arnice Watson, they were in a buggy. E. P. Hawkins testified: Some five or six months before he on several occasions saw Fred Koger going towards West End; that the places he met defendant was from three-quarters to a mile from Dr. Ferguson's, etc., where Arnice Watson lived. Henry Snipes testified: That something over a year prior, he met Arnice Watson on the street and they stopped and talked a while; that several days afterward, defendant passed him and shook

his finger at him and said, "Don't do that any more." Witness asked him, "Don't do what any more?" that defendant replied, "A word to the wise is sufficient." Witness testified he did not know what defendant was talking about, but suspicioned he referred to his talk with Arnice Watson. The State also introduced a judgment of the County Court of Ellis County, Texas, in which it appeared that on the 14th day of September, 1911, on a charge of adultery and fornication pending in said court, defendant entered a plea of guilty and was fined $100, but it don't appear whether he plead guilty to adultery or fornication.

We are inclined to believe that the evidence in this case is insufficient, as contended by appellant, to sustain the verdict.

The court gave a full and fair charge in this case and, among others, a full charge on circumstantial evidence. The court did not err, therefore, in refusing appellant's first special charge to the effect that suspicious circumstances and familiarity are not sufficient to prove adultery or fornication by habitual carnal intercourse without actual proof of an act of carnal intercourse. Carnal intercourse between all persons is indulged as secretly and as privately as possible. Such act must generally, if not always, be proved by circumstantial evidence and while suspicious circumstances and familiarity alone might not be sufficient, such charge should not have been given in this case.

While it was admissible for the witness Henry Snipes to testify to what occurred and was said by appellant to him and that a few days prior thereto he had a short talk with the woman Arnice Watson on the streets of Waxahachie, it was improper and the witness should not have been permitted to testify that he thought appellant's said talk to him referred to his, the witness', talk with Arnice Watson. His thought or suspicion should not have been admitted. The jury could pass upon that question from the other testimony of the witness.

The court did not err in permitting the testimony of Robert Phillips, objected to and shown by appellant's fourth bill of exceptions. The testimony was admissible. The weight of it was for the jury.

The former judgment of conviction of appellant was admissible in evidence, but upon another trial, in order to show that it was a repetition of the same offense, the State should introduce the information upon which said judgment was based so as to clearly identify for what offense he was convicted. Articles 1618 et seq., P. C.; Muckenfuss v. State, 55 Texas Crim. Rep., 216.

The writer believes the county attorney was justified and could properly argue that if the former conviction was for the same offense as this, and appellant plead guilty thereto, that the jury could consider appellant's confession or plea of guilty in that case and the judgment thereon in connection with the other facts and circumstances of this case. His former confession and conviction, if for the same offense, might cut both ways, however. The State could contend as it did, as shown by the argument of the county attorney. Appellant could contend that having been convicted before and punished therefor, it would show or tend to

show that he would not again be guilty of the same offense and thereby incur double punishment, and that, instead of being against him, together with the other facts and circumstances, it was for him to show he was not guilty in this case. These matters were matters of argument before the jury. The jury could pass upon the question and take either side of the deduction, and it would be for or against him as they might determine, they passing on the weight to be given to the testimony in that matter as all others. It is only by reason of the fact of appellant's plea of guilty or confession in the former case that such comment was permissible. A mere conviction of him without any plea of guilty or confession could not so be commented upon. The court, however, is of opinion this was not permissible, and on another trial it should not be permitted.

There is nothing else requiring discussion. For the errors above pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*