OLLIE CHILDRESS v. THE STATE.

No. 5346.    Decided March 5, 1919.

1.—Adultery—Insufficiency of the Evidence—Accomplice.

Where, upon trial of adultery by unlawfully living together, etc., the facts and circumstances, outside of the testimony of the accomplice, were not sufficient to justify the verdict of the jury in holding that the parties had sexual intercourse, the conviction could not be sustained.

2.—Same—Requested Charge—Accomplice—Corroboration.

Where, upon trial of adultery, the court charged upon circumstantial evidence and accomplice testimony, but refused to give in addition thereto, a requested charge that in order to convict the defendant the accomplice should be corroborated as to the act of sexual intercourse, the same was reversible error under the facts of the instant case.

3.—Same—Rule Stated—Adultery.

Where no act of intercourse is shown, proof of mere suspicious circumstances is insufficient. Following Manuel v. State, 45 Texas Crim. Rep., 97, and other cases.

Appeal from the County Court of Childress.    Tried below before the Hon. R. T. Burns, judge.

Appeal from a conviction of adultery by living together; penalty a fine of $100.

The opinion states the case.

No brief on file for appellant.

*E. A. Berry*, Assistant Attorney General, *Earl E. Carter*, County Attorney of Hill County, *H. P. Shead*, Assistant County Attorney of Hill county, for the State.—Cited Brown v. State, 69 Texas Crim. Rep., 138, 154 S. W. Rep., 567; Wilson v. State, 57 Texas Crim. Rep., 336, 123 S. W. Rep., 140; Bodkins v. State, 75 Texas Crim. Rep., 499, 172 S. W. Rep., 216; Counts v. State, 49 Texas Crim. Rep., 329; Shaw v. State, 49 id., 397; Brown v. State, 57 id., 570; Hinson v. State, 53 id., 143; Mizell v. State, 59

Texas Crim. Rep., 226, 128 S. W. Rep., 125; Chandler v. State, 60 Texas Crim. Rep., 329, 131 S. W. Rep., 598.

DAVIDSON, PRESIDING JUDGE.—Omitting formal allegations, the complaint and information charge that appellant "did then and there unlawfully live together and have carnal intercourse with Annie May Blakemore, a woman not his wife, he being then and there lawfully married to another person then living."

Annie May Blakemore testified that about the 7th of May appellant employed her to go to his house, and take care of his home, keep house for him and look after his children and to do the cooking for which he agreed to and did pay her three dollars a week. She went to his house about the 7th of May and stayed about three months, or until about the 30th of July following. Appellant's wife had left him and his two girl children, six and eight years of age respectively, and had gone to Fort Worth. She further stated that appellant told her he was going to get a divorce from his wife and marry her. After this occurred they had intercourse with each other. They occupied different rooms. She further stated that appellant would sometime come to her room and sometime she would go to appellant's room; that the little girls stayed in the room with defendant. On cross-examination she stated she was unaware of the fact appellant had a wife at the time she made the trade to become his housekeeper, cook and take care of his children. She also testified that the defendant worked in the basement of the courthouse, and that she would go to the court house in a buggy, taking the little girls with her and bring defendant back. So far as she knew no one had ever seen defendant in bed with her, or had seen any improper relations between them. No one had ever heard him address her or she him in endearing terms, or seen him kiss her. She says the reason she left defendant's home was because defendant's wife came home and ordered her off the place, and tore her dress off; that she got scared and excited and left, and defendant's wife accused her of beating up her children. After she got this beating from defendant's wife she told Mr. Curtis, an officer about it, and he went with her to appellant's home, but there was no one there, but they met the defendant when they came back to town, and Mr. Curtis told the defendant in witness' presence that if he would pay the witness $15 for the shirt his wife had torn off of her there would be no more trouble, or nothing more said about it, but if defendant did not pay it he would file a case against him for adultery with witness. She says that Henry Miller and his wife, Emily, lived close by them and saw her in the discharge of her duties as housekeeper and washwoman on appellant's place.

Henry Miller testified that he lived about 300 yards from where defendant lived, and was living there last May, June and July. He saw witness Blakemore at defendant's house. She was living there

cooking, washing and attending to defendant's children. She would come to witness' house to get water. Upon cross-examination this witness said he knew defendant's wife had left him and gone to Fort Worth, and the witness Blakemore was living with defendant during the absence of his wife keeping house, washing, cooking and attending to the little children; that defendant worked in the basement of the courthouse and came back and forth for his meals. During all the time that the witness Blakemore stayed at defendant's house this witness never saw any act of intimacy or undue familiarity of any kind between defendant and Annie May Blakemore. Emily Miller testified as did her husband.

The witness Curtis testified that he was deputy sheriff of Hill county, and was called to defendant's house about the 30th of July on account of a difficulty between Maggie Childress, wife of defendant, and Annie May Blakemore. When he went to the house he found no one at home; that Annie May Blakemore and himself came to town and met defendant. Witness says he never was in defendant's house but the defendant was working in the basement of the courthouse, and this woman Blakemore would come frequently in a buggy in the evening and get defendant and drive him from the courthouse to his home. He further testified defendant told him he was going to get a divorce and marry this woman; that he never saw any improper relations between them. He also testified on cross-examination that he told the defendant if he would pay this woman for the silk dress his wife tore off her there would not be anything else, so far as he was concerned, to it, and he would give him until the next day at three o'clock to pay for the dress, otherwise he would file a case for adultery against him. It seems defendant did not pay for the dress and prosecution was instituted. Appellant introduced no evidence.

The court charged on circumstantial evidence, and gave a charge on accomplice testimony. In addition to the charge given by the court on accomplice testimony, in several requested instructions appellant sought to have the jury instructed that in order to convict the defendant, that the accomplice Blakemore should be corroborated as to the act of intercourse. The court did not give this phase of it in his charge, but charged generally that she would have to be corroborated as to the commission of the offense. She was amply corroborated as to the fact that she lived in the house, and was doing the washing and cooking and looking after the children, and would go to the courthouse in a buggy and take defendant home. So far as their occupying the same house there was corroboration. Neither of the children was placed on the witness stand. We are of opinion that under the peculiar facts of this case the court should have instructed the jury as requested by appellant. Intercourse might be shown by circumstances, but the circumstances must be of such a nature as to exclude every reasonable hypothesis

except that as applied directly to this case of the fact of intercourse. Evidently the court thought, and correctly so, that unless this act of intercourse was proved, it was a case of circumstantial evidence. There are two ingredients in this phase of the statute, first, living together, and, second, one or more acts of intercourse. The woman testified he had intercourse with her, but no other witness did. No one saw any act of intimacy between them. We are of opinion the charge should have been given, and also that the facts and circumstances are not sufficient to justify the verdict of the jury in holding that the parties had intercourse. See Branch's Ann. P. C., p. 601, Sec. 1059, and Branch's Crim. Law, p. 8, Sec. 20, for collation of authorities. It is correctly stated by Mr. Branch in his Crim. Law; "Where no act of intercourse is shown, proof of mere suspicious circumstances is insufficient. Manuel v. State, 45 Texas Crim. Rep., 96, 74 S. W. 30; Eaton v. State, 60 Texas Crim. Rep., 429 132 S. W. 356." "Proof that the parties lived in the same house, but occupied different rooms, is not sufficient of itself to sustain a conviction. Smelser v. State, 31 Texas, 95; Bradshaw v. State, 61 S. W. 713." In Kahn v. State, 38 S. W. Rep., 989, it was said: "Defendant employed a woman as housekeeper during the absence of his wife. He was seen once to kiss her, and once he met and escorted her home, and when his wife returned he said he 'was in a sweat as he had two women on his hands.' This evidence was held insufficient." In his Annotated Penal Code Mr. Branch collates quite a number of cases in Sec. 1059, where the evidence was held insufficient to support a conviction for adultery. There the rule is again stated: "Where no act of carnal intercourse is shown, proof of mere suspicious circumstances is not sufficient to sustain a conviction for adultery." Ham v. State, 15 S. W. Rep., 405; Kahn v. State, supra, Manuel v. State, supra, Green c. State, 53 Texas Crim. Rep., 540; Eaton v. State, supra, Koger v. State, 73 Texas Crim. Rep., 448. It is deemed unnecessary to quote from these authorities. They all sustain the rule announced by Mr. Branch, and an inspection of the cases cited sustain the proposition asserted that the evidence is not sufficient under such circumstances.

Believing the evidence is not sufficient as presented by this record, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*