PAUL GEORGE v. THE STATE.

No. 6355.   Decided October 19, 1921.

Rehearing denied January 5, 1922.

**Adultery—Insufficiency of the Evidence.**

Where, upon trial of adultery by having habitual carnal intercourse without living together, the evidence adduced by the State did not reach that degree of certainty as required by law, and the guilt of defendant was entirely dependent upon circumstances alone, the same was not sufficient to sustain the conviction. Following Green v. State, 53 Texas Crim. Rep., 540, and other cases.

Appeal from the County Court of Williamson. Tried below before the Honorable F. D. Love.

Appeal from a conviction of adultery; penalty, a fine of $1000.

The opinion states the case.

*Luke Mankin* and *W. C. Wofford,* for appellant.—Cited cases in opinion.

*R. G. Storey,* Assistant Attorney General, and *Dan Moody* for the State.

HAWKINS, JUDGE.—Appellant was convicted of adultery, and his punishment assessed at a fine of one thousand dollars.

The complaint and information charges that he was guilty of having habitual carnal intercourse with Annie Furhmann without living with said party. The record reaches us with only one assignment of error, which calls in question the sufficiency of the evidence to convict, and necessarily brings in review the entire testimony in the case.

The following are substantially the facts. Charlie Fuhrmann, the husband of the said Annie Furhmann, testified that, he and his wife had been married about eighteen years; that about four or five months prior to January 3, 1921, appellant began coming to or near his house and taking said Annie Furhmann out in an automobile; he would come sometimes in the day-time and sometimes at night, but most of the time he would come about eight o'clock at night, and they would return between ten and eleven o'clock. He would not come directly to the house, but within a block or so and sound the horn on his car, and said Annie Fuhrmann would go out and get in the car and they would drive away. Upon one occasion the witness claims that his wife was in her night-gown about eight o'clock at night when appellant sounded his horn; she grabbed a cloak and ran out to the car and put on the cloak after she got in the car, and they drove away and got back at about the usual time; that on another occasion he came when his wife was in her bare feet and she went away with him in that condition. Witness also claims that one time appellant called over the telephone and he, witness, answered, and recognizing appellant's voice, told him he wanted him to let his wife alone, and that appellant replied that he was going to have her at all costs. Witness claims that on one occasion appellant came to the street in front of his house and he shot at him, whereupon he drove away, but in a few minutes came back, and his wife got in the car with him and they drove away as usual; that he continued to come and take witnesses' wife away after witness had shot at him. The witness claims that appellant would average coming and carrying his wife away three or four times a week, and sometimes he would take her out every night in the week. This witness says he never at any time caught his wife and appellant in bed together and never saw him at any time put his hand on her; never saw them in any act of intercourse at any time or place, and did not know what they did while away in the car or where they went. It developed on cross-examination of the husband of appellant's alleged paramour, that it was probable that he himself was living in adultery with another woman, and that a suit was pending in which he had sued his wife for divorce. It also developed in evidence that after the separation between Charlie Furhmann and his wife occurred, appellant and Annie Furhmann were occupying the same house; which was explained in the testimony, both of appellant and Annie Furhmann. The State introduced George Hanley, who testified that on two occasions, once in day time and once at night, he had seen appellant and Annie Furhmann in a car together, but saw no improper conduct between them, and on both occasions they were in a public place. Annie Furh-

mann testified that there had never been any improper relations between her and appellant, denied sexual intercourse with him at any time, and specifically denied the statement of her husband that she ever went with appellant in an automobile when she was barefooted or clothed only in her night gown. She also testified that she was occupying part of a house, the other portion of which was occupied by a Bohemian family; that appellant was boarding with her, paying her nine dollars per week; that he worked at the railroad shop at night and in the daytime slept at the house. Upon cross-examination this witness was asked by the State if she had not told her niece, Mrs. Hanley, that she was in love with appellant, and that appellant was going to kill Charlie Furhmann, and that she, witness, would take it upon herself and get out of it; all of which she denied. She was impeached in this particular by Mrs. Hanley, who testified, affirming that Annie Furhmann had made this statement to her about November or December of 1920. Appellant denied that he had ever at any time had intercourse with Annie Furhmann, or that there had ever been any improper relations between them. He claimed to be working at the railroad shop at Taylor, and was working from twelve o'clock at night until about eight o'clock in the morning; that he owned an automobile; that at such times as he was not busy at the railroad shop he operated his car as a service car. He admitted he had been out with Annie Furhmann on various occasions, but claimed she had always telephoned him, and that he had taken her out wherever she wanted to go, for which she would pay him. He denied that at any time she was ever in her night gown or was bare footed. Appellant says that one time when he went to get Mrs. Furhmann that Charlie Furhmann shot his pistol off, but did not know whether he was shooting at him or not; that one time he took Mrs. Fuhrmann out in the country after she had telephoned him that she wanted to go out for the purpose of selling a horse. This is substantially all the evidence in the case, and is set out at greater length than we would ordinarily think necessary on account of the sole question being the sufficiency of the evidence to support the conviction.

Practically all of the incriminating testimony comes from the husband of the alleged paramour of appellant. It would appear that he himself is not entirely free from criticism, having admitted on cross-examination adulterous relations on his part with another woman, and that he had sued his wife for a divorce, which suit was pending at the time of the instant trial. If his testimony is to be believed and given full credence it unquestionably presents a series of suspicious circumstances showing at least acts of indiscretion on the part of his wife and of appellant; but it being purely a case of circumstantial evidence, is it of that cogency to be conclusive upon the issue of adulterous relations between the parties involved? It is true guilt may be proven by circumstances as well as by direct evidence, but in the instant case, are the circumstances detailed of such character as to exclude every

reasonable hypothesis than that of appellant's guilt? The statement made by Mrs. Hadley that upon one occasion Mrs. Fuhrman had told her that appellant was going to kill Charlie Fuhrmann, could not be used as evidence against appellant as establishing guilt upon the charge of adultery, but was only admissible for the purpose of impeaching Mrs. Fuhrmann. That there may have been a case of infatuation between appellant and Mrs. Fuhrmann, the evidence would seem to disclose practically beyond question, unless appellant's testimony should be accepted that their numerous automobile rides were at her request, and that he was acting only in the capacity of a jitney driver. The jury seems not to have placed much credence in his testimony, and evidently disregarded this theory. It occurs to us that if the automobile rides were as continuous as claimed by the State, that in all probability it would have excited the curiosity and suspicion of someone in the neighborhood whose attention might have been attracted by the manner in which appellant would signal for Mrs. Furhmann, and who might have been able to throw some light on that issue, and at least, not have left the case depending solely upon the paramour's husband's testimony, who might or might not have been influenced in this case by the fact that he was seeking a divorce from his wife, and whose own sexual relations with another woman were of an improper character. We cannot bring ourselves to the conclusion that the evidence reaches that degree of certainty required where the proof of guilt is dependent upon circumstances alone. We do not review or discuss the many cases which have been before this court involving this same question, believing it would be of no interest to do so as they are practically all fact cases, necessarily so, by reason of the issues raised, but refer to the following cases as supporting our opinion. Green v. State, 53 Texas Crim. Rep., 540, 110 S. W. Rep., 908; Saddler v. State, 52 Texas Crim. Rep., 439, 107 S. W. Rep., 352; Quinn v. State, 51 Texas Crim. Rep., 155, 101 S. W. Rep., 248; Eaton v. State, 60 Texas Crim. Rep., 429, 132 S. W. Rep., 356; Koger v. State, 73 Texas Crim. Rep., 448, 165 S. W. 577 (Crim. App.) Kahn v. State, 38 S. W. Rep., 989 (Crim. App.); Anderson v. State, 81 Texas Crim. Rep., 37, 193 S. W. Rep., 301; Smith v. State, 58 Texas Crim. Rep., 206, 124 S. W. Rep., 919; Manuel v. State, 45 Crim. App., 97, 74 S. W. Rep., 30; Price v. State, 64 Texas Crim. Rep., 448, 142 S. W. Rep., 586.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

[Rehearing denied January 5, 1922. REPORTER.]