[File No. Cr. 135.]

STATE OF NORTH DAKOTA, Respondent, v. MATT A. NOEL, Appellant.

(268 N. W. 654.)

Opinion filed July 29, 1936.

*C. F. Kelsch,* for appellant.

*Robert Chesrown,* State's Attorney, *P. O. Sathre,* Attorney General, and *T. A. Thompson,* Assistant Attorney General, for respondent.

BURKE, Ch. J. The defendant, Matt A. Noel, was convicted, in the district court of Emmons county, of the crime of rape in the second degree.

The motion for a new trial was overruled, and the defendant appeals from the judgment of conviction and from the order denying the motion for a new trial.

Appellant specifies as error—

"That the verdict is clearly against the evidence in that:

"(1) That the evidence is insufficient as a matter of law to establish the guilt of the defendant, beyond a reasonable doubt, of the crime of rape in the second degree as charged in the information; that there is no sufficient evidence to corroborate the prosecutrix to prove the commission of an act of rape.

"(2) That the only evidence offered and received as to defendant's age at the time of the commission of the crime of rape in the second degree as charged in the information shows that he was 25 years of age on the 1st day of January, 1935."

There is no merit in the contention that the verdict is against the evidence. The specific acts are testified to by the prosecutrix and the witness Hazel Hoff testified to circumstances and to acts which clearly connect the defendant with the commission of the crime.

The theory of appellant is that the prosecutrix, Julia Horner, is an accomplice and that, therefore, her testimony must be corroborated. If she was an accomplice, her testimony is corroborated by the testimony of the witness Hazel Hoff; but the prosecuting witness, Julia Horner, was not an accomplice. "The victim of the rape is never an accomplice, the rule in this respect being the same whether the crime was committed by force, or against the will of the female, or by fraud, or consisted in carnal knowledge of a female under the age of consent, although she actually consented thereto." 16 C. J. p. 683, § 1392; Price v. State, 56 Tex. Crim. Rep. 82, 119 S. W. 99; State v. Hender-

son, 84 Iowa, 161, 50 N. W. 758; Melton v. State, 71 Tex. Crim. Rep. 130, 158 S. W. 550; Bond v. State, 63 Ark. 504, 30 S. W. 554, 58 Am. St. Rep. 129; People v. Bernon, 29 Cal. App. 424, 155 P. 1021; Yeager v. United States, 16 App. D. C. 356; McCreary v. Com. 163 Ky. 206, 173 S. W. 351; Com. v. Feist, 50 Pa. Super. Ct. 152; Price v. State, 64 Tex. Crim Rep. 448, 142 S. W. 586; Battles v. State, 63 Tex. Crim. Rep. 147, 140 S. W. 783; Smith v. State (Tex. Crim. Rep.) 73 S. W. 401; Smith v. State, 51 Tex. Crim. Rep. 137, 100 S. W. 924; Miller v. State (Tex. Crim. Rep.) 72 S. W. 996; Hamilton v. State, 36 Tex. Crim. Rep. 372, 37 S. W. 431; State v. Hilberg, 22 Utah, 27, 61 P. 215. "The usual test by which to determine whether or not one is an accomplice of a defendant on trial is whether or not he could be indicted and punished for the crime with which defendant is charged." 16 C. J. p. 671, § 1344. This statement in the text is supported by an unbroken line of authorities cited in the notes and is unquestionably the law.

Prosecuting witness, as a matter of course, could not be prosecuted for the crime of rape, and, therefore, is not an accomplice. The case cited and relied upon by appellant is an incest case, where, as a matter of course, both parties could be prosecuted and each was the accomplice of the other.

The defendant was charged, in the information, with rape in the second degree. It was alleged that he was over the age of twenty years, to-wit, twenty-three years, and under the statute a defendant over twenty years of age and under twenty-four can be charged only with rape in the second degree when the female is under eighteen years of age. It developed at the trial that the defendant was twenty-five years of age, and it is the contention of the appellant that there is a fatal variance between the allegations and the proof, the allegations charging the defendant with rape in the second degree and the proof showing him to be guilty of rape in the first degree. The specific objection by the appellant is "I want to object to that proof, the defendant's age constitutes a fatal variance between the crime charged in the complaint and information and the crime it would constitute under the statute."

The court was properly constituted, it had jurisdiction of the offense charged, of the defendant, and by the empaneling of the jury and pro-

ceedings in the prosecution, the defendant was placed in jeopardy. "Where, on the trial, the court, without the consent of accused, discharges the jury because it is of the opinion that the evidence shows him guilty of a higher crime, for which crime he is subsequently indicted, he is twice in jeopardy and should be acquitted." 16 C. J. p. 253, § 407; People v. Ny Sam Chung, 94 Cal. 304, 29 P. 642, 28 Am. St. Rep. 129; Ingram v. State, 124 Ga. 448, 52 S. E. 759; Holt v. State, 38 Ga. 187.

Reason for rule. "If the State thinks proper, by its prosecuting officer, to indict a party for an assault with intent to murder, upon a given state of facts, and upon the trial thereof, the defendant is acquitted, can the State then prefer another indictment, alleging precisely the same state of facts, (with the exception of the malicious intent,) and put the party again upon his trial for the same criminal acts, by altering the name of the offence? The State having made its election as to the nature and character of the offence for which it will prosecute the party upon a given state of facts, if, upon the trial, the defendant is acquitted, ought not the State to be bound by its election, and not be permitted again to indict and prosecute the defendant for the same criminal acts, under the name of another offence? The question to be answered is, has the defendant been arraigned and put upon his trial upon a sufficient legal accusation, for the same criminal acts with which he is charged the second time? If he has, then he has been put in jeopardy, within the true intent and meaning of the constitution, and cannot be tried the second time for the same criminal acts, under the same, or a different named offence." Holt v. State, 38 Ga. 187. Thus this rule applies to a person indicted for manslaughter, where the court discharges the jury and such person is subsequently indicted for murder. People v. Hunckeler, 48 Cal. 331.

In the instant case the state elected to try the defendant for rape in the second degree and it is bound by its election. The defendant was put in jeopardy and if he had been acquitted he could not be tried again, if the conviction is sustained he cannot be tried again.

Albert Heer was called as a witness for the state. He testified he was not in the party with the defendant, the prosecuting witness, and Hazel Hoff either at the dance, the Green Lantern Cafe, where other witnesses testified they had lunch, nor at the cemetery, where, according

to the testimony of the prosecuting witness, the offense was committed. The prosecuting witness and Hazel Hoff had testified that the witness Heer was with them at the dance, at the Green Lantern Cafe, and at the cemetery, where they said the offense was committed. After denial on the part of Heer, the state's attorney then cross-examined him as to the statements made in his presence and in the presence of others. The State's attorney then asked the witness this question:

"Q. Now, I will ask you did you not state to me that Matt Noel told you after you came back from the cemetery that he had had intercourse with Julia Horner?

"A. No."

Louis Langeliers, a witness, is called for the state and is asked this question:

"Q. Did you hear the witness, Albert Heer, deny having made the following statement . . . that Albert Heer told me that Matt Noel told him that he had had intercourse with Julia Horner on the night in question?

"By Mr. Kelsch: That is objected to as prejudicial and not binding on him, and not made in the presence of the defendant.

"By the Court: It will be admitted merely for the purpose of impeachment of the witness, Albert Heer.

"A. He did."

What was the purpose of impeaching this witness? His testimony was purely negative and so far as his testimony was concerned the record was the same as though he hadn't been called at all, and while the court did say it was only for the purpose of impeachment, they did manage to get this statement, which he is claimed to have made to the State's attorney in the presence of the sheriff, in evidence. It was hearsay evidence and was extremely prejudicial, for which there must be a new trial.

A case very much in point is the case of Andrews v. State, 64 Tex. Crim. Rep. 2, 141 S. W. 220, 42 L.R.A.(N.S.) 747. In that case the court said: "The district attorney in asking the questions in the form he does, states that the witness had so informed him, and states, when objected to: 'I am not offering it as original testimony—I am laying a predicate for impeachment. He tells me a tale now, and told me a different tale in the room a while ago;' thus informing the jury

that the witness had so told him. The witness had not testified to any fact that could or would surprise the district attorney, but had merely failed to testify to what he apparently expected him to testify, and, being his own witness, was it permissible to permit him to lay a predicate to impeach him, and thus get before the jury evidence otherwise inadmissible? In Bailey v. State, 37 Tex. Crim. Rep. 579, 40 S. W. 281, it is held: 'A party can only impeach his own witness when such witness has testified to some damaging fact, and mere failure to testify does not give the right to impeach him.' In Williford v. State, 36 Tex. Crim. Rep. 414, 37 S. W. 761, it is held: 'Where the state asked her own witness if the defendant did not make a certain declaration to the witness, which the witness denied or stated he did not remember, the answer of the witness is conclusive, and it is not competent for the state to show by other witnesses that the witness had so stated to others.' And in Thomas v. State, 14 Tex. App. 70, it is said: 'A party can impeach his own witness only when he has testified to facts injurious to his cause. A mere negative answer, when the party expected an affirmative answer, will not give the right to contradict the witness.' See also Bennett v. State, 24 Tex. App. 73, 5 S. W. 527, 5 Am. St. Rep. 875; Erwin v. State, 32 Tex. Crim. Rep. 519, 24 S. W. 904; Kirk v. State, 35 Tex. Crim. Rep. 224, 32 S. W. 1045; Shackelford v. State (Tex. Crim. Rep.) 27 S. W. 8; Gibson v. State (Tex. Crim. Rep.) 29 S. W. 471, and Finley v. State (Tex. Crim. Rep.) 47 S. W. 1015." Continuing the court said: ". . . 'But it is said that the error of the court in admitting this testimony is cured by the subsequent exclusion thereof and withdrawal by the court of said testimony from the consideration of the jury. This question has been before the courts of this state in a number of cases. . . . We think the true rule on this subject to be: If the testimony is not of a material character, it may be withdrawn by the court, and the error thus cured; but if, on the contrary, the evidence was of a material character, and was calculated to influence or affect the jury, the withdrawal of the same from their consideration would not heal the vice of its admission.' This is the rule of this court, especially in those cases where the testimony showing guilt is weak, as in this case."

Following the Texas case Andrews v. State, supra, there are voluminous notes supporting and stating the rule. It is well settled that

a party cannot impeach a witness whom he has voluntarily called, or made his own, unless the witness has given affirmative testimony injurious to the party's case and has not merely failed to testify to facts which the party sought to prove by him.

The instant case comes squarely within the rule. See, also, Re Campbell, 100 Vt. 395, 138 A. 725, 54 A.L.R. 1369; State v. Youman, ante, 204, 263 N. W. 477.

The judgment is reversed and a new trial ordered.

NUESSLE, MORRIS and CHRISTIANSON, JJ., concur.

BURR, J. (Dissenting.) The judgment in this case is reversed solely because of the desire on the part of the state's attorney to impeach his own witness, but the trial court did not permit it. The decision shows there is ample evidence to sustain the verdict, and that unless error be shown in the matter mentioned, the defendant had a fair trial.

The witness Heer was a member of the group during the evening of the crime; but denied he was at the cemetery at the time the offense was committed. Apparently his testimony led the state's attorney to believe he was a hostile witness. The state's attorney asked the witness this question, "Now I will ask you did you not state to me that Matt Noel told you after you came back from the cemetery that he had had intercourse with Julia Horner?" The witness answered, "No." The defendant assigns error on this, but no objection was made to the question, and, therefore, the assignment of error fails.

The decision does not reverse the case because of this question but cites it, I assume, to show the connection with the question to which objection was made and overruled.

The state, presumably to contradict its own witness, Heer, called the sheriff, Louis Langeliers, and the record shows as follows:

"Q. Do you recall the conversation had between myself and Albert Heer in your car on the 11th day of April 1935, on the road West of Linton? A. Yes, sir.

"Q. Were you in the car that day? A. I was.

"Q. And who else? A. Mr. — I can't recall his name, Albert Heer is it?

"Q. Where was I? A. In the front seat.

"Q. Where was you? A. In the front seat.

"Q. Where was Albert Heer? A. In the back seat.

"Q. Do you recall what kind of a car Albert Heer was driving that day? A. He was driving a truck, I think an International.

"Q. Do you recall the conversation had between myself and Albert Heer at that time, the meeting on the 11th of April 1935?

"By Mr. Kelsch: Answer Yes or No.

"A. Yes, sir."

It will be noted there is no intimation as to the content of the conversation and no objection to these preliminary questions. The record continues:

"Q. Will you state that conversation?

"By Mr. Kelsch: That is objected to as no proper foundation has been laid for the impeachment of the witness Albert Heer; second, that the question is not in proper form as an impeachment question was not put to the witness.

"By the Court: Sustained on the ground that the witness admitted the statement on April 11th as I remember his testimony.

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"Q. Do you recall the conversation had on that day between myself and Mr. Heer? A. I do.

"Q. And can you state that conversation at that time—you can answer that Yes or No? A. Yes, sir.

"Q. Will you state the conversation had between myself and Mr. Heer on the 20th of May 1935, in your presence?

"By Mr. Kelsch: That is objected to as incompetent, inadmissible, no proper foundation, not a proper impeaching question, not in proper form, no foundation has been laid for the impeachment of the witness upon any specific point.

"By the Court: The witness Albert Heer didn't deny the conversation but he did deny a certain statement."

Again it will be noted there is nothing to suggest the nature of the conversation. The record continues:

"Q. You heard the witness, Albert Heer testify this morning? A. I did.

"Q. Did you hear the witness, Albert Heer, deny having made the following statement? A. I did.

"Q. Wait a minute—that Albert Heer told me that Matt Noel told him that he had had intercourse with Julia Horner on the night in question?

"By Mr. Kelsch: That is objected to as prejudicial, and not binding on him, and not made in the presence of the defendant.

"By the Court: It will be admitted merely for the purpose of impeachment of the witness, Albert Heer."

This is the ruling challenged and the ruling is the sole ground for reversal. The answer was "He did." The jury heard Heer deny it, the judge heard him deny it, those present in the court room heard him deny it. The effect of the sheriff's testimony was nugatory, the jury knew he was telling the truth.

The record continues:

"Q. What did he say?

"By Mr. Kelsch: That is objected to as improper, incompetent, prejudicial, hearsay, no foundation laid, not binding on this defendant, and not a proper impeaching question.

"By the Court: Sustained."

The question involved this record: "Did you hear the witness, Albert Heer, deny having made the following statement? . . . Wait a minute—that Albert Heer told me (the state's attorney) that Matt Noel told him (that is, Heer) that he (Noel) had had intercourse with Julia Horner on the night in question?" The defense objected to this question, but the court permitted it and so the witness answered that he heard Heer deny making that statement. Had the sheriff been permitted to show the witness said Matt Noel told him, etc., we would have an entirely different situation.

When the sheriff was asked if he recalled the conversation, not only did the defendant fail to object to it, but defendant's counsel told the sheriff to "Answer yes or no." In response to this suggestion by defendant's own counsel, the sheriff said he recalled the conversation had between Heer and the state's attorney. He was examined about getting the witness Heer, was cautioned by defendant's counsel not to go into conversation and he did not. He was asked if he recalled the conversation, he said he did, and he was asked if he could state it and to answer

yes or no, and he answered that he could state it. There was no objection on the part of the defendant to any portion of this examination. He was then asked the question set forth in the majority opinion, "Did you hear Heer deny making the statement etc. ?" He said he did. When asked what he said, that is what was the conversation, the defendant objected and the court sustained the objection.

It is claimed the state's attorney, in this subtle way, got before the jury as a fact that his own witness at one time said to the state's attorney that Matt Noel had told Heer of the intercourse with the complaining witness. But he did not. Heer denied saying so, no one disputes the denial, nothing further was done. Nowhere in the record that I can find does the state's attorney offer to prove or even state he could prove Heer told him so.

This court went far in the case of State v. Youman, ante, 204, 263 N. W. 477, to reverse a conviction for rape because of the attempt of the state to impeach its own witness; but whatever may have been the merits of the controversy in the Youman Case, it is clear there was far more foundation there than in the case at bar. In the Youman Case the state's attorney stated in the presence of the jury that the witness was testifying on the trial "different from what he did at the preliminary hearing;" that he had the transcript of the record with him. He flourished the transcript before the court, read purported extracts of this testimony in the form of questions to the witness, and did impeach his own witness. This court, in this Youman Case, held this was reversible error, even though the witness impeached was a witness for the state because the questioning of the state's witness and showing of his testimony on the preliminary examination implied "that the witness was withholding from the jury facts which were unfavorable to the defendant. Such an implication is prejudicial in its tendency, and, under the circumstances, we cannot say that it did not have an effect upon the jury's verdict." Whatever may be the merit of this reason, the situation does not exist here. There was no impeachment of his own witness.

In the majority opinion a large number of cases are cited to the effect that while a party may impeach his own witness, "a mere negative answer, when the party expected an affirmative answer, will not give the right to contradict the witness." In Andrews v. State, 64

Tex. Crim. Rep. 2, 141 S. W. 220, 42 L.R.A.(N.S.) 747, cited, the state's attorney himself told what he claimed the witness said, very much as in the Youman Case, supra, and the testimony he was trying to get into the record was testimony to exculpate a woman claimed to be an accomplice and not on trial—not statements as to what the defendant said. In Bailey v. State, 37 Tex. Crim. Rep. 579, 40 S. W. 281, it was the defendant who sought to impeach his own witness who was testifying as she testified on the preliminary examination. He was not surprised, for he knew what she would testify. He did not need to call her in the first place, and she gave no damaging testimony against him. He asked for an attachment for a witness to impeach her and the trial court refused it. The court of criminal appeals said this was correct.

What is said in the majority opinion about how error in impeachment may be cured or may be incurable is based on the premise that the party introduces contradictory testimony in the nature of impeachment. That did not happen here. No witness impeached Heer.

It is not every mistake of the state's attorney which justifies a reversal. In the case of State v. Nedtvedt, ante, 535, 268 N. W. 397, just recently decided, it was shown the state's attorney, in his argument to the jury, called the defendant a "bootlegger" when there was no testimony in the record showing her to be a "bootlegger;" and this court held it was not reversible error, though conceded to be improper, because the trial court told the jury to disregard the statement. In the case at bar the defendant did not even ask the court to caution the jury to disregard the answer of the sheriff that he had heard Heer deny making the statement involved, or to pay no attention to any imputation in the question asked.

To reverse a case because of an erroneous ruling on a preliminary question makes the state's work more dangerous than the walking on the proverbial eggs. Many a preliminary question, standing alone, has no bearing upon the issue involved, but to permit an answer to such preliminary question is not necessarily a reversal. As to whether such questions are competent is to be determined by what follows. As nothing followed in this case, the question was merely irrelevant and immaterial. In State v. Kent (State v. Pancoast) 5 N. D. 516, 536, 67 N. W. 1052, 35 L.R.A. 518, a witness for the state was asked questions

"which, standing alone, would have no bearing upon any issue in the case." But this court held that such questions were preliminary in their nature. They became competent by reason of what followed, and, therefore, the effect of such preliminary questions could then be determined. The majority seem to think the plain intimation of this examination was that Heer had made to the state's attorney the statement which Heer denied making. Even if this be the intimation, the state was merely showing that its own witness was not telling the truth at one time and was, therefore, not worthy of credence by the jury. The state was destroying the effect of its own witness. Had the state shown what statement Heer made, the rule set forth in the Youman Case might apply, but certainly does not here for the state did not go that far.

It is admitted there is ample evidence to sustain the verdict, and yet because the sheriff truthfully answered that he heard a witness for the state deny that he had made a certain statement to the state's attorney, without any proof whatever regarding the statement or any impeachment of the witness, there must be a new trial. We may as well repeal § 11013 of the Comp. Laws, which says: "After hearing the appeal, the court must give judgment without regard to technical errors or defects or exceptions which do not affect the substantial rights of the parties." Had the sheriff been permitted to answer that Heer had made that statement, it would have been an entirely different proposition. I believe the judgment should be affirmed.