**STATE of North Dakota, Plaintiff and Respondent,**

v.

**Richard DWYER, Defendant and Appellant.**

**Cr. No. 388.**

Supreme Court of North Dakota.

Nov. 26, 1969.

Edward J. Murphy, Fargo, for defendant and appellant.

Helgi Johanneson, Atty. Gen., Bismarck, Thomas L. Burgum, State's Atty., and David E. Nething, Sp. Asst. State's Atty., Jamestown, for plaintiff and respondent.

PAULSON, Judge.

This is an appeal by Richard Dwyer from the judgment of conviction entered against him on March 31, 1969, in the District Court of Stutsman County, North Dakota.

Richard Dwyer was tried by a Stutsman County jury. The criminal information alleged that Richard Dwyer sold to Gregory Waxler a narcotic drug, namely, marijuana, in violation of Chapter 19-03 of the North Dakota Century Code. Two witnesses testified for the State, Gregory Waxler and Ardel Wolff, a detective with the Jamestown Police Department. Gregory Waxler testified that he purchased marijuana from Richard Dwyer for about $50.00. Ardel Wolff testified that he received the marijuana from Waxler and that it was the same marijuana which was introduced into evidence. The State rested and Dwyer did not take the witness stand, nor did he have any witness testify in his behalf. The case was submitted to the jury, which returned a verdict on March 25, 1969.

Dwyer, through his attorney, made a motion for a new trial on the sole ground that the verdict of the jury was contrary to law and clearly against the evidence. This motion was denied by the district court.

Richard Dwyer appeals to this court from the judgment of conviction, and asserts as error the following:

1. The verdict of the jury is contrary to law and clearly against the evidence.

2. The trial court erred in refusing to instruct the jury as to defendant's Requested Instruction Number One.

3. The evidence was insufficient in the following particulars, to wit:

A. The testimony of Gregory Waxler was wholly uncorroborated as required by law in the case of an accomplice.

4. There were manifest errors of law occurring at the trial which were duly excepted to or specified herein.

Dwyer, for one of his specifications of error, urges that the verdict was contrary to law and clearly against the evidence. One of Dwyer's contentions is that the transfer of marijuana did not constitute a sale. In support of this contention, Dwyer specifically refers to the testimony of Gregory Waxler, which testimony is as follows:

[Cross-examination of Gregory Waxler by Mr. Murphy]

"Q Let me ask you this question: Did you and the defendant at any time discuss the purchase and sale of marijuana?

"A Yes.

"Q And did you at that time—would it be safe to say you decided between the two of you to purchase and sell marijuana?

"A Yes.

"Q And as an outgrowth of that agreement would you say then that you and the defendant did purchase the very marijuana we are talking about today?

"A I think so.

"Q In fact, you know definitely that that is correct, do you not?

"A That what is correct?

"Q That you and the defendant, it would be safe to say, you agreed to buy and sell this marijuana and that is the same marijuana we are talking about today?

"A Yes."

\* \* \* \* \* \*

[Recross-examination]

"Q Let me ask you this: This money you allegedly paid over to the defendant, Richard Dwyer, that was part of an agreement that you and he had, would that be safe to say, this is part of your payment towards the purchase of this marijuana?

"A What?

"Q That this was part of the agreement between you and Richard Dwyer—would it be safe to say that this money was part of your share of the general scheme and plan to purchase marijuana and resell it?

"A Yes, I think you could say that."

Dwyer contends that this testimony establishes a general scheme by Waxler and himself to purchase marijuana from a third person for the purpose of resale to other individuals, and, the plan being a joint effort, the money paid by Waxler to Dwyer represented Waxler's contribution to the plan for the purchase of his proportionate share of a certain amount of marijuana. Dwyer therefore argues that, since there was no sale, he could not as a matter of law be guilty of the crime of sale of a narcotic drug.

The information charges Dwyer with the sale of a narcotic drug to Gregory Waxler in violation of Chapter 19–03 of the North Dakota Century Code. The propriety of Dwyer's conviction hinges on the word "sale" as used in the wording of the statute and as alleged in the criminal information. The word "sale" has been defined by our Legislature to include "* * * barter, exchange, or gift, or offer therefor, and each such transaction made by any person, whether as principal, proprietor, agent, servant, or employee". § 19–03–01(9), N.D.C.C. The same definition is set forth verbatim in the Uniform Narcotic Drug Act. 9B U.L.A. § 1(10), p. 416.

This court has not previously interpreted the legislative definition of "sale" as em-

ployed in § 19-03-01(9), N.D.C.C. We are not, however, without precedent. The States of Illinois and New Jersey both have adopted the Uniform Narcotic Drug Act. The Supreme Court of Illinois, in People v. Shannon, 15 Ill.2d 494, 155 N.E. 2d 578, 580 (1959), in construing a similar statute, said:

> "We interpret the meaning of the word 'sale,' as defined by the act, to be much ·broader in scope than that usually given to it in other branches of the law. Admittedly, the defendant took the role of at least an agent, and the act specifically declares an agent in a narcotics transaction to be a seller. We are of the opinion that the definition shows a legislative intent that the act of a person whether as agent, either for the seller or the purchaser, or as a go-between, in such a transaction constitutes a sale."

The Superior Court of New Jersey, in State v. Weissman, 73 N.J.Super. 274, 179 A.2d 748, 753 (1962), held:

> "Under the circumstances of such unlawful episodes, it is immaterial whether · Green be characterized as a 'buyer,' a 'purchaser,' or an 'agent'—she was a recipient of marijuana, and money therefor was passed by her to the party from whom she acquired the illegal drug. We hold, as did the Illinois Supreme Court, that the word 'sale' as defined in the Uniform Narcotic Drug Law is broader in scope than the definition usually given to it in other branches of the law, and that the passing of illicit merchandise and money, between the defendant and Green, constituted a sale as comprehended by and within the prohibitions of our narcotic drug laws."

In the instant case, Richard Dwyer might be either an agent of a seller or an agent of Waxler. Dwyer submits that the transaction was a joint scheme or plan by Waxler and himself, and that, accordingly, Dwyer should still be considered as an agent of Waxler. However, in this case, it is not material whether Dwyer was

Waxler's agent either under the doctrine of a principal-agent relationship or as an agent for both of them at the time he purchased the marijuana from a third person. Black's Law Dictionary (4th ed. 1957) defines an "agent" as "A person authorized by another to act for him, one intrusted with another's business"; or as "One who undertakes to transact some business, or to manage some affair, for another, by the authority and on account of the latter, and to render an account of it." See § 3-01-01, N.D.C.C.; 3 Am.Jur.2d Agency § 1, p. 419; and 2 C.J.S. Agency § 1a(1), p. 1023. Therefore, following the expanded scope of the definition of the word "sale" as used in § 19-03-01(9), N.D.C.C., as well as in the Uniform Narcotic Drug Act, and as construed by the Supreme Court of Illinois and the Superior Court of New Jersey, we conclude that the transfer of the marijuana by Dwyer to Waxler in consideration of the payment of a sum of money constitutes a sale within the purview of § 19-03-01(9), N.D.C.C.

A further specification of error urged by Dwyer is that the court refused to instruct the jury pursuant to Dwyer's Requested Instruction Number One, which reads as follows:

> "A conviction cannot be had upon the testimony of an accomplice unless he is corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense, or the circumstances thereof."

This specification of error is predicated on the ground that Waxler and Dwyer were operating under a joint plan for the purpose of purchasing marijuana. We have concluded that the joint scheme or plan to make a transfer of marijuana, in consideration of the payment of a sum of money, constituted a sale under the Narcotics Law, and thus Dwyer was a vendor and Waxler was a purchaser. The question then arises whether Waxler, as a purchaser, was an accomplice of Dwyer's. If we determine

that Waxler was an accomplice, then it would be necessary for the trial court to instruct the jury on the law concerning an accomplice and on the statutory law which requires corroboration of the testimony of an accomplice to support a conviction.

An "accomplice" is one who knowingly, voluntarily, and with common intent with the principal offender, unites in the commission of a crime. Black's Law Dictionary (4th ed. 1957); 23 C.J.S. Criminal Law § 786(1), p. 1; 30 Am.Jur.2d Evidence § 1149, p. 325. State v. Johnson, 81 S.D. 600, 139 N.W.2d 232 (1965). This court said, in State v. Helmenstein, 163 N.W.2d 85, 88 (N.D.1968), that an "accomplice" is one who knowingly, and with criminal intent, associates or concurs with another in the commission of a crime. The test by which to determine whether or not one is an accomplice of a defendant on trial is whether or not he could be indicted and punished for the crime with which defendant is charged. State v. Noel, 66 N.D. 676, 268 N.W. 654 (1936).

Whether Waxler as a purchaser of narcotics is an accomplice of the seller is dependent upon the record before this court. Waxler, as a purchaser, could be charged with possession of a narcotic drug and not as a seller arising out of the same sale transaction. "Sale" or "possession" of a narcotic drug under our statutes is each a separate offense. This determination is supported by other jurisdictions. People v. Galli, 68 Cal.App. 682, 230 P. 20 (1924); People v. Freytas, 157 Cal.App.2d 706, 321 P.2d 782 (1958); Tellis v. State, 84 Nev. —, 445 P.2d 938 (1968); State v. Wolfskill, 421 S.W.2d 193 (Mo.1967); People v. Ricci, 59 Misc.2d 259, 298 N.Y.S.2d 637 (1969). We adhere to the decisions in the above cases, which hold that a purchaser is not an accomplice; and, therefore, Waxler was not an accomplice, and the trial court did not err in denying the requested instruction submitted by Dwyer.

The State was the only party to present evidence in this case. There were two witnesses who testified on behalf of the State. Waxler testified on direct examination that he purchased the marijuana from Dwyer, for which he paid about $50.00. Later he became a reluctant and forgetful witness. On cross-examination and recross-examination, Waxler's direct and redirect testimony was weakened by defense counsel. Ardel Wolff testified that Waxler turned over to him the marijuana which Waxler purchased from Dwyer. Wolff also testified that the marijuana was preserved and tested. The record shows that the tests revealed that each of the two plastic bags, Plaintiff's Exhibits 1 and 2, had contained marijuana. All of the State's exhibits, that is, the two empty plastic bags which had contained marijuana, as well as the two petri dishes which contained the tested samples of marijuana, were admitted into evidence without objection by Dwyer. The jury heard the evidence and is the trier of the facts. This court will not substitute its opinion for the verdict of the jury, nor can it find that the trial court abused its discretion in sustaining the jury's verdict of guilty in this case where the jury could reasonably have found from the evidence that there was a sale of marijuana by Dwyer to Waxler. State v. Carroll, 123 N.W.2d 659 (N.D. 1963); State v. Loyland, 149 N.W.2d 713 (N.D.1967).

Dwyer further contends that the evidence was insufficient to justify the verdict because Waxler was an accomplice and that his testimony was wholly uncorroborated, as required by § 29-21-14, N.D. C.C. State v. Helmenstein, 163 N.W.2d 85 (N.D.1968). We agree that the trial court properly determined that Waxler was not an accomplice, and, accordingly, his testimony need not be corroborated.

Dwyer further urges that the trial court erred with reference to its rulings wherein it permitted the prosecuting attorney to ask Waxler leading questions on direct as well as redirect examination. Whether leading questions shall be permitted or not is very largely discretionary

with the trial court and its rulings in that respect will not be disturbed, unless it is apparent from the record that the discretion was abused to the prejudice of the defendant. State v. Empting, 21 N.D. 128, 128 N.W. 1119 (1910); State v. Fujita, 20 N.D. 555, 129 N.W. 360 (1910). It is often necessary to resort to leading questions in order to elicit facts from a witness who, because of hostility, ignorance, diffidence, or other reasons will not or cannot give fair and full answers. It is often proper and commendable to direct the witness' attention to the subject of inquiry, or to refresh his recollection as to some omitted detail, by a leading question.

We believe that the record in the instant case discloses that the method of examination pursued was harmless error. Waxler was 15 years of age, was forgetful, diffident, and uncooperative, and clearly was a reluctant and unwilling witness. The trial court did not, under the circumstances, abuse its discretion in this case.

For reasons stated in the opinion the judgment of conviction is affirmed.

TEIGEN, C. J., and ERICKSTAD, STRUTZ, and KNUDSON, JJ., concur.