STATE of North Dakota, Plaintiff and Appellee,

v.

Edward ENNIS, Defendant and Appellant.

Crim. Nos. 885, and 895 to 898.

Supreme Court of North Dakota.

May 26, 1983.

trolled substance, hashish, to René Ostberg on September 9, 1981, § 19–03.1–23(1)(b), N.D.C.C., § 19–03.1–05(4)(*l*), N.D.C.C. Subsequent thereto, a judgment of conviction, dated August 9, 1982, was entered by the District Court of Williams County from which Ennis now appeals. For the reasons hereinafter stated, we reverse Ennis' conviction of unlawfully possessing marijuana with the intent to deliver and affirm his convictions with regard to delivering hashish and marijuana to René and Kevin Ostberg.

Kent Reierson, State's Atty., Williston, for plaintiff and appellee; argued by Kent Reierson.

Kurzman, Shapiro, Manahan & Partridge, Minneapolis, Minn., and Bjella, Neff, Rathert, Wahl & Eiken, Williston, for defendant and appellant; argued by Marc G. Kurzman, Minneapolis, Minn., and Richard G. Carver, Bismarck.

ERICKSTAD, Chief Justice.

Defendant/Appellant, Edward G. Ennis, was charged with and ultimately adjudged guilty in a bench trial of five separate offenses: possessing a controlled substance, five pounds of marijuana, with the intent to deliver, § 19–03.1–23(1)(b), N.D.C.C., § 19–03.1–05(4)(*o*), N.D.C.C.; unlawfully delivering a controlled substance, hashish, to Kevin Ostberg on September 23 and 28, 1981, § 19–03.1–23(1)(b), N.D.C.C., § 19–03.1–05(4)(*l*), N.D.C.C.; unlawfully delivering a controlled substance, marijuana, to René Ostberg on September 2, 1981, § 19–03.1–23(1)(b), N.D.C.C., § 19–03.1–05(4)(*o*), N.D.C.C.; and, unlawfully delivering a con-

## I. SUPPRESSION MOTION

On April 7, 1982, the County Judge of Williams County issued a warrant to search Ennis' home. The sole basis for this warrant was a sworn affidavit submitted to the county judge by Jim Quickstad, a lieutenant detective in the Williams County Sheriff's office. The pertinent part of Quickstad's affidavit [1] is paragraph four:

"4. March of 82, a Confidential informant who has given information in the past leading to under cover purchases of drugs and who has given information known by Jim Quickstad to be true and reliable about Drug Dealers told to Jim Quickstad that Ed Ennis had 10lbs [sic] of Marijuana in his home on April 7, and has been selling Marijuana from this 10 lbs. Ed Ennis told the confidential informant that the 10 lbs of marijuana were at his home at 1309 24th stW and could be bought there"

Pursuant to this warrant, the Williams County Sheriff's office searched Ennis'

---

1. The probable cause section of Quickstad's affidavit reads in its entirety as follows:

"1. In the Fall of 1981 Renae Ostberg stated to Drug Enforcement Agent Buzzano that Ed always has good hash.

"2. Ed Ennis was seen by Police Officers comming [sic] to the Ostbergs home just pryor [sic] to Agent Buzzano buying Hashish.

"3. A search of Ed Ennis home Revealed numerous bottles of Counterfeit Drugs.

"4. March of 82, a Confidential informant who has given information in the past lead-

ing to under cover purchases of drugs and who has given information known by Jim Quickstad to be true and reliable about Drug Dealers told to Jim Quickstad that Ed Ennis had 10lbs [sic] of Marijuana in his home on April 7, and has been selling Marijuana from this 10 lbs. Ed Ennis told the confidential informant that the 10 lbs of marijuana were at his home at 1309 24th stW and could be bought there"

home and found five zip-lock bags [2] containing a substance alleged to be marijuana. The Crime Laboratory Division of the State Laboratories Department subsequently determined that the plant material in these five bags was marijuana. Evidence of these facts was received in Ennis' trial.

However, prior to Ennis' trial, defense counsel filed a written motion to suppress the five bags of plant material discovered during the search of Ennis' home on the basis that the affidavit underlying the search warrant contained a number of material misrepresentations and that the information in such affidavit was stale. At a subsequent hearing on this motion, counsel orally requested an evidentiary hearing to challenge the veracity of Quickstad's affidavit. The court granted counsel's request.[3] Subsequent to these hearings, the trial court denied Ennis' motion to suppress the evidence.

At the evidentiary hearing, Quickstad testified that he had no knowledge as to how the informant concluded that ". . . Ed Ennis had 10lbs [sic] of Marijuana in his home on April 7, and has been selling Marijuana from this 10 lbs." Quickstad admitted that he did not question the informant as to whether he obtained his information by either seeing the marijuana or hearing of the marijuana firsthand from Ennis. Upon scrutinizing the record, we are of the opinion that Quickstad had worked with the informant on prior occasions, believed him to be reliable, and consequently accepted his conclusory statement that Ennis had marijuana in his home which was for sale without inquiring as to the basis of the informant's knowledge.

The questions presented by this factual situation are:

Whether or not the affiant's statement in the search warrant affidavit with regard to how the informant obtained his information should be set aside; and, if so, whether or not the affidavit's remaining

---

**2.** The bags weighed 454.2, 455.2, 454.6, 454.1, and 454.5 grams respectively.

**3.** The following colloquium between Mr. Kurzman, defense counsel, Mrs. Schmitz, Assistant State's Attorney, and the trial court, indicates that the trial court granted Mr. Kurzman's request for an evidentiary hearing to challenge the veracity of Quickstad's sworn statements:

"MR. KURZMAN: . . . we have a statement here in Paragraph Four . . . 'Ed Ennis told the confidential informant that ten pounds of marijuana were at his home and could be bought there.' Actually, Lieutenant Quickstad says, this is when he testified under oath on April 20, 1982, at Page Eight of that transcript, he said he didn't know what the basis was. He didn't know how the informant came to the knowledge that there was allegedly marijuana at Ennis' house. . . .

"At Pages 18, 19, and 20, he says he has no idea of the basis of knowledge for the informant, . . .

"[U]nder the Franks case, the defendant must show first, the likelihood of material misrepresentations of fact or reckless disregard for the truth; and then, if the defendant can show that, the items which constitute those misrepresentations of fact or which evidence reckless disregard for the truth are taken out of the Affidavit, and it is then read to see if probable cause exists without those statements. We would submit without the statements that we have indicated to this

Court, . . . [T]here is no probable cause upon which the warrant could be issued, . . .

\* \* \* \* \* \*

"We would request, therefore, a hearing, and, if the State wishes to call witnesses relative to these alleged misstatements or statements in reckless disregard of truth, of course, we will cross-examine at that time. . . .

"MRS. SCHMITZ: . . .

"I would be happy to call the affiant, Quickstad, and he is present; . . .

"I would submit to the Court that One, Two, and Three, possibly, and relate on their face, that these One, Two, and Three are old. They are things that have happened in the past. . . .

\* \* \* \* \* \*

"MR. KURZMAN: Your Honor, we would submit . . . that the sworn testimony of Lieutenant Quickstad which are directly contrary to the search and the Affidavit is sufficient offer of proof as to the possibility of the misstatements or fabrications.

\* \* \* \* \* \*

"THE COURT: Do you wish to call Mr. Quickstad?

"MRS. SCHMITZ: I'll call him, Your Honor."

The State does not contend that the trial court erred in granting Ennis' request for an evidentiary hearing; therefore, we will not address that point on appeal.

content is sufficient to establish probable cause.

The veracity of an affiant's statements in a warrant affidavit can be challenged pursuant to the guidelines set forth in *Franks v. Delaware*:

"[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667, 672 (1978).

For the purpose of applying the test enunciated in *Franks,* a false affidavit statement is a statement which misleads the neutral and detached magistrate into believing that the stated facts exist, which facts in turn affect his evaluation of whether or not there is probable cause. *State v. Groff,* 323 N.W.2d 204, 210 (Iowa 1982).

Upon reviewing the record in the case at bar, we believe Quickstad's testimony at the evidentiary hearing reveals that he knowingly and intentionally asserted that his informant told him that Ennis had told the informant that Ennis had marijuana for sale when in fact Quickstad had failed to ask the informant how he obtained such information. Specifically, Quickstad testified as follows:

"BY MR. KURZMAN:

". . . What do you claim the informant told you the morning of April 7?

"A. Since I didn't write the conversation down verbatim, I can only speculate that he came in and told me, 'Mr. Ennis has ten pounds for sale. He has it at his house.'

"Q. And you, of course, then said, 'How do you know that information?' Right?

"A. I don't recall whether I did or not.

\* \* \* \* \* \*

"BY MRS. SCHMITZ:

"Q. What was the conversation, Mr. Quickstad?

"A. Again, as far as I can recollect, he said that Ed Ennis had the ten pounds of marijuana for sale. I don't recall asking him or whether he had seen it or whether Mr. Ennis had told him personally. He said, 'Mr. Ennis has the ten pounds for sale.'"

Thus, the statement in question which Quickstad attributed to the informant was merely an assumption on his part and not a statement by the informant. This statement is false because it is a bald assertion devoid of factual support which mislead the magistrate into believing that he knew the underlying circumstances from which the informant concluded that ". . . Ed Ennis had 10lbs [sic] of Marijuana in his home on April 7, and has been selling Marijuana from this 10 lbs." Hence, in accordance with the dictates of *Franks,* we are required to set this statement aside and ascertain whether or not the remainder of the affidavit is sufficient to establish probable cause.

In making this determination, we will not consider affidavit paragraphs (1), (2), and (3) inasmuch as the information presented in such paragraphs was approximately six months old at the time the warrant was issued and, therefore, stale. Upon eliminating both the stale information and the false information, the sole statement remaining in the affidavit is:

"March of 82, a Confidential informant who has given information in the past leading to under cover purchases of drugs and who has given information known by Jim Quickstad to be true and reliable about Drug Dealers told to Jim Quickstad that Ed Ennis had 10lbs [sic] of Marijua-

na in his home on April 7, and has been selling Marijuana from this 10 lbs."

The foregoing statement consists of information relayed to Quickstad by his informant. When an affidavit is based on hearsay information as in this instance, probable cause must be determined in accordance with the dictates of *Aguilar v. Texas*:

"Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, *Jones v. United States*, 362 U.S. 257 [80 S.Ct. 725, 4 L.Ed.2d 697], the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, see *Rugendorf v. United States*, 376 U.S. 528 [84 S.Ct. 825, 11 L.Ed.2d 887], was 'credible' or his information 'reliable.'" (Footnote omitted). 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723, 729 (1964).

The Basis of Knowledge Prong of this analytical framework, known as the *Aguilar* Two-pronged Test, requires that the magistrate be informed of how the informant obtained his information. *State v. Schmeets*, 278 N.W.2d 401, 406 (N.D.1979).

■ It is evident that the statement which we found to be false and eliminated from the search warrant affidavit details the circumstances from which the informant concluded that Ennis had marijuana in his home which was for sale. Without this statement, the affidavit fails to satisfy the *Aguilar* Basis of Knowledge Test. As the magistrate was mislead, the warrant was not issued upon probable cause and, accordingly, the contraband seized during the search of Ennis' home should have been suppressed pursuant to defense counsel's motion.[4] Evidence of the five pounds of marijuana was necessary to convict Ennis of possession of marijuana with the intent

to deliver. We therefore reverse Ennis' conviction on this count.

## II. INSUFFICIENCY OF EVIDENCE TO SUSTAIN ENNIS' CONVICTION OF DELIVERING CONTROLLED SUBSTANCES

At Ennis' trial, René and Kevin Ostberg testified that Ennis supplied them with the marijuana and hashish which they ultimately sold to special agent Paul Bazzano on September 2, 9, 23, and 28, 1981. Subsequent thereto, Ennis was charged with and convicted of delivering controlled substances, hashish and marijuana, to René and Kevin Ostberg on the aforementioned dates. Ennis was not charged with delivering marijuana or hashish to special agent Buzzano.

Ennis contends that the evidence introduced by the State was insufficient to sustain his convictions of delivering marijuana and hashish to René and Kevin Ostberg on the dates in question. His argument in this respect is twofold. First, he argues that René and Kevin Ostberg were accomplices of Ennis; and, second, that the evidence adduced at trial was insufficient to corroborate their testimony as accomplices.

■ To adjudicate this issue, we must first ascertain whether or not Kevin and René Ostberg were accomplices of Ennis. The test to determine whether or not one is an accomplice of a defendant on trial is ". . . whether or not he could be indicted and punished for the crime for which the defendant is charged." *State v. Dwyer*, 172 N.W.2d 591, 596 (N.D.1969); *State v. Noel*, 66 N.D. 676, 680, 268 N.W. 654, 656 (1936).

■ In the case at bar, René and Kevin Ostberg could be charged with delivering marijuana and hashish to special agent Buzzano. However, common sense dictates that they could not be charged, as Ennis was, with delivering controlled substances to René and Kevin Ostberg. Hence, Ennis' assertion fails.

---

4. The affidavit and search warrant in question were prepared by the Williams County Sheriff's Office independent of the Williams County States Attorney.

Ennis also contends that the evidence introduced by the State was insufficient to identify the substances delivered as "marijuana" or "hashish."[5] The record is replete with conflicting expert-witness testimony concerning identification of the substances. The State's expert witness, Aaron Rash, Supervisor of the Crime Laboratory Division of the State Laboratories Department, testified that he performed four laboratory tests upon the samples in question: microscopic identification; Duquenois-Levine; thin layer chromatography; and infrared spectroanalysis. According to Rash, each of these tests indicated that the substances were marijuana or hashish.

The defense attempted to undermine Rash's testimony by emphasizing that Rash has limited botanical training; and, therefore, he was not qualified to make a conclusive microscopic identification when numerous plants have the same characteristics as the plant Cannabis from which marijuana is derived. In addition, the defendant's expert witness, Dr. Fullerton, testified that the Duquenois-Levine test is nonspecific and inaccurate because numerous plants contain the chemical resorcinol which triggers a positive reaction in the test. Dr. Fullerton also stated that the four spectra charts used in the infrared spectroanalysis were neither internally consistent nor consistent with the reference spectra.

The crux of Dr. Fullerton's testimony was that, based on the State Laboratory's analysis, it is impossible to positively identify the substances as marijuana or hashish. However, on cross-examination, Dr. Fullerton admitted that he was not stating nor could he state that the substances analyzed were not marijuana or hashish.

We are reluctant to reverse the factual findings of a trial court with regard to disputed questions of fact. *State v. Olm-*

stead, 246 N.W.2d 888, 890 (N.D.1976), *cert. denied,* 436 U.S. 918, 98 S.Ct. 2264, 56 L.Ed.2d 759 (1978). We will not substitute our judgment for that of the trial court if the trial judge's factual determinations are supported by substantial evidence. *Olmstead, supra,* 246 N.W.2d at 890; *State v. Champagne,* 198 N.W.2d 218, 226 (N.D. 1972); *State v. Larson,* 61 N.W.2d 274, 275 (N.D.1953).

Determining whether or not the substances in question were marijuana or hashish was the exclusive function of the trier of fact, the trial judge. The defense presented strong contradictory evidence, all of which was directed toward proving that Aaron Rash was inept and that the tests performed in the State Laboratory were both inadequate and inconclusive. Defense counsel, however, did not offer evidence of independent tests performed by an expert in which the substances were shown to not be marijuana or hashish.

Where the trial court heard the experts testify, observed their demeanor, and judged their credibility, and where there is substantial competent evidence to support the court's factual determination, we conclude that the defendant failed to leave us "... with a definite and firm conviction that a mistake has been committed." *Olmstead, supra,* 246 N.W.2d at 890. That is the situation in this case as to the existence of the controlled substance.

## III. CONSTITUTIONALITY OF CLASSIFYING MARIJUANA AS A SCHEDULE I DRUG

Ennis' final contention is that the trial court erroneously denied his motion to dismiss on the basis that classifying marijuana in Schedule I of the Uniform Controlled Substances Act, Chapter 19–03.1, N.D.C.C.,

---

5. Ennis asserts that the trial court had a reasonable doubt regarding identification of the substances in question which doubt mandates a reversal. However, we must remind counsel of the exact language utilized by the trial court:
   "He's also guilty beyond a reasonable doubt, there is a doubt, but not beyond a reasonable doubt. And my only doubt is in the chemical analysis; that bothered me some, but it's not beyond a reasonable doubt ...."
   Upon analyzing this statement, we believe the testimony of defendant's expert, Dr. Fullerton, created some question in the trial court's mind; however, such conflicting evidence did not create a "reasonable doubt."

violates his Fifth Amendment rights to equal protection and due process. Defendant's constitutional challenge is premised on the theory that, pursuant to statutory definition, it is permissible to classify marijuana as a Schedule I drug only if it "has [a] high potential for abuse" and "has no accepted medical use ... or lacks accepted safety for use in treatment ...." [6] Specifically, Ennis asserts that classifying marijuana as a Schedule I drug is arbitrary and irrational as the classification no longer bears a rational relationship to a legitimate governmental interest because: (1) governmental studies conducted subsequent to the enactment of the Uniform Controlled Substances Act reveal that marijuana does not have a "high potential for abuse"; and, (2) marijuana is currently used safely in the treatment of cancer and glaucoma. Ennis relies upon case authority which stands for the proposition that: "the constitutionality of a statute predicated upon a particular state of facts may be challenged by a showing to the court that those facts have ceased to exist." *United States v. Carolene Products Co.*, 304 U.S. 144, 153, 58 S.Ct. 778, 784, 82 L.Ed. 1234 (1938).

Recent studies may have dispelled the myths that marijuana is an addictive narcotic and generally a stepping-stone to more serious drugs.[7] *See, Nat. Org. for Reform of Marijuana Laws v. Bell,* 488 F.Supp. 123, 129 (1980). However, as the United States

District Court said in *Nat. Org. for Reform of Marijuana Laws v. Bell* : "Studies indicate that marijuana may impair the circulatory, the endocrine, and the immunity systems of the body, alter chromosomes and change cell metabolism." [8] 488 F.Supp. at 136. Furthermore, a recent bulletin from the United States Department of Justice reveals that "a fourth of all burglaries and roughly a fifth each of all robberies and all drug offenses were committed under the influence of marijuana." Bureau of Justice Statistics Bulletin, *Prisoners and Drugs* (March 1983). Thus, without attempting to restate all the arguments pro and con on this subject, we conclude, based on the record before us and our research, that the experts strongly disagree as to whether or not marijuana "has [a] high potential for abuse." Furthermore, we do not believe that the questions of whether or not marijuana "has no accepted medical use ... or lacks accepted safety for the use in treatment" can be resolved by the simple fact that some states may now be experimenting with the use of marijuana as a prescriptive drug under very limited circumstances. *See, State v. Whitney,* 96 Wash.2d 578, 637 P.2d 956 (1981).[9]

In *Carolene Products Co.,* the United States Supreme Court unequivocally said that when a court is asked to review the

**6.** The statutory provision in question is Section 19–03.1–04, N.D.C.C.:
  "*19–03.1–04. Schedule I tests.* The department shall place a substance in schedule I if it finds that the substance:
  1. Has high potential for abuse; and
  2. Has no accepted medical use in treatment in the United States or lacks accepted safety for use in treatment under medical supervision."

**7.** Marihuana & Health: Fifth Annual Report to the United States Congress from the Secretary of Health, Education, and Welfare 3 (1975), at 91; Decriminalization of Marihuana: Hearings Before the House Select Committee on Narcotics Abuse & Control, 95th Congress, 1st Sess. 423–38 (1977).

**8.** *See* pp. 128–130 of *Nat. Org. for Reform of Marijuana Laws v. Bell,* 488 F.Supp. 123 (1980) for a full discussion of marijuana's effects.

**9.** In *Whitney,* the Washington Supreme Court said that removing marijuana from Schedule I and placing it in Schedule II for the purpose of researching its effect on the treatment of cancer and glaucoma patients "... does not mean that the legislature has found that the drug does not have a high potential for abuse or that it has an accepted medical use and is safe for use in treatment under medical supervision." *Whitney,* 96 Wash.2d, *supra* at 583, 637 P.2d, *supra* at 960. The court further stated that "[t]he retention of the drug in schedule I for purposes other than the research program cannot reasonably be said to bear no rational relation to a legitimate legislative purpose." *Whitney,* 96 Wash.2d, *supra* at 583, 637 P.2d, *supra* at 960.

judgment of a legislative body, it should exercise a policy of judicial restraint:

"[I]nquiries, where the legislative judgment is drawn in question, must be restricted to the issue whether any state of facts either known or which could reasonably be assumed affords support for [the classification]. Here the demurrer challenges the validity of the statute on its face and it is evident from all the considerations presented to Congress, and those of which we may take judicial notice, that the question is at least debatable.... As that decision was for Congress, neither the findings of a court arrived at by weighing the evidence, nor the verdict of a jury can be substituted for it." 304 U.S. at 154, 58 S.Ct. at 784–85.

Our court has on prior occasion recognized and followed this policy of judicial restraint: "This court will not substitute its judgment for that of the legislative body which has the primary duty and responsibility of determining a question where the

question is fairly debatable." *State v. Boushee,* 284 N.W.2d 423, 432 (N.D.1979).

■ Accordingly, because the issue of whether or not marijuana is properly classified as a Schedule I drug is fairly debatable, we will not usurp the legislature's factfinding function. In essence, we conclude as did the three United States District Judges in *Nat. Org. for Reform of Marijuana Laws v. Bell,* that "[t]he continuing questions about marijuana and its effects make the classification rational." [10] 488 F.Supp., *supra* at 136.

Finally, pursuant to Section 19–03.1–02, N.D.C.C.,[11] the North Dakota State Laboratories Department has the authority to reclassify marijuana. This statutory provision provides a sensible mechanism for "... dealing with a field in which factual claims are conflicting and the state of scientific knowledge is still growing." *United States v. Kiffer,* 477 F.2d 349, 357 (2d Cir.1973),

**10.** It is interesting to note that the federal Controlled Substances Act enacted in 1970 and upon which the North Dakota Controlled Substances Act is based classified marijuana as a Schedule I drug. 21 U.S.C. § 812. Furthermore, the U.S. Attorney General has not seen fit to reclassify marijuana pursuant to its statutory authorization. 21 U.S.C. §§ 811–812.

**11.** The statutory provision in question reads in relevant part as follows:

"*19–03.1–02. Authority to control.*

"1. The North Dakota state laboratories department shall administer this chapter and may add substances to or delete or reschedule all substances enumerated in the schedules in sections 19–03.1–05, 19–03.1–07, 19–03.1–09, 19–03.1–11, or 19–03.1–13 pursuant to the procedures of chapter 28–32. In making a determination regarding a substance, the department shall consider the following:

a. The actual or relative potential for abuse;

b. The scientific evidence of its pharmacological effect, if known;

c. The state of current scientific knowledge regarding the substance;

d. The history and current pattern of abuse;

e. The scope, duration, and significance of abuse;

f. The risk to the public health;

g. The potential of the substance to produce psychic or physiological dependence liability; and

h. Whether the substance is an immediate precursor of a substance already controlled under this chapter.

"2. After considering the factors enumerated in subsection 1, the department shall make findings with respect thereto and issue a rule controlling the substance if it finds the substance has a potential for abuse.

\* \* \* \* \* \*

"4. If any substance is designated, rescheduled, or deleted as a controlled substance under federal law and notice thereof is given to the department, the department shall similarly control the substance under this chapter after the expiration of thirty days from publication in the federal register of a final order designating a substance as a controlled substance or rescheduling, or deleting a substance, unless within that thirty-day period, the department objects to inclusion, rescheduling, or deletion. In that case, the department shall publish the reasons for objection and afford all interested parties an opportunity to be heard. At the conclusion of the hearing, the department shall publish its decision, which shall be final unless altered by statute. Upon publication of objection to inclusion, rescheduling, or deletion under this chapter by the department, control under this chapter is stayed until the department publishes its decision." § 19–03.1–02, N.D.C.C.

*cert. denied,* 414 U.S. 831, 94 S.Ct. 165, 38 L.Ed.2d 65 (1973). As the Second Circuit further stated in *Kiffer*:

"... [T]he very existence of the statutory scheme indicates that, in dealing with this aspect of the 'drug' problem, Congress intended flexibility and receptivity to the latest scientific information to be the hallmarks of its approach. This ... is the very antithesis of the irrationality appellants attribute to Congress." 477 F.2d, *supra* at 357.

Incidentally, a reasonable argument can be made and has been made that the statutory criteria asserted by Ennis are not intended to be exclusive.[12]

We conclude that it cannot reasonably be said that classifying marijuana as a Schedule I drug bears no rational relationship to the legitimate State interest of controlling drug abuse. *Boushee, supra,* 284 N.W.2d at 432.

In accordance with the foregoing opinion, we reverse Ennis' conviction for possessing marijuana with the intent to deliver and affirm the remaining four convictions.

VANDE WALLE, PEDERSON and PAULSON, JJ., concur.

SAND, Justice, concurring specially.

While the majority opinion correctly identifies the United States Supreme Court case law on search and seizure which we are obligated to follow, I have reservations regarding the manner those principles of law have been applied to the facts of this case. The principal issue is whether or not probable cause existed for the search of the home and the seizure of the alleged marijuana.

The opinion correctly points out that the statement by the informant does not disclose how the informant obtained the information, whether it was the result of personal observation, or whatever, and neither did the officer to whom the statement was given ask the informant the basis for his statement. While the statement may not provide probable cause for a search warrant, it is not *false* merely because it is a "bald assertion devoid of factual support." According to the briefs, the record does not reflect that the statement was knowingly and intentionally given with reckless disregard for the truth. The statement may not be reliable or sufficient for a search warrant because it was inadequate and was not followed up with appropriate questions and the officer's recollection was poor, but that does not make it false under the holding of *Franks v. Delaware,* cited in the majority opinion.

The majority opinion, in discussing the issue of probable cause, makes frequent reference in one form or another to the contents of the informant's statement, "Ed Ennis had 10 lbs. of Marijuana in his home on April 7, and *has been selling Marijuana from this 10 lbs.*" [Emphasis added.] This, without any qualification, may suggest that in establishing probable cause valid information must be submitted that marijuana is at a certain place *and is being sold.* If selling is an integral part of the rule of law the opinion tends to convey, then I must disagree because the opinion would be adding unnecessary criteria to the probable cause requirement. In my opinion, the sale or sales need not be established to justify

12. In *Nat. Org. for Reform of Marijuana Laws v. Bell,* the United States District Court said: "The House report states that '[a]side from the criterion of actual or relative potential for abuse, subsection (c) of section 201 [21 U.S.C. § 811(c)] lists seven other criteria ... which must be considered in determining whether a substance meets the specific requirements specified in section 202(b) [21 U.S.C. § 812(b)] for inclusion in particular schedules ....' 1970 House Report, *supra* at 35, *reprinted in* [1970] U.S.Code Cong. & Admin.News at 4602. The criteria listed in section 811(c) include the state of current knowledge, the current pattern of abuse, the risk to public health, and the significance of abuse. These more subjective factors significantly broaden the scope of issues to be considered in classifying a drug. Given these other concerns, Congress might well want marijuana in Schedule I for regulatory purposes. Such a classification carries heavier penalties for sale, distribution, and importation, thus aiding law enforcement officials in their effort to reduce the supply of marijuana." (Footnote omitted). 488 F.Supp. at 140–141.

the issuance of a search warrant for a controlled substance. Mere possession of marijuana, a controlled substance, in violation of NDCC § 19–03.1–23(3) is a crime. However, I agree that the statement by the informant does not disclose how or on what basis he acquired the information and as such the information is questionable and is legally inadequate to justify the issuance of a search warrant. If the informant had been properly questioned, it is possible that the informant may have had the necessary information and would have provided appropriate answers which would have made the information sufficient to justify a search warrant. But this was not done.