**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Lemuel James LARSON, Defendant and Appellant.**

**Cr. No. 660.**

Supreme Court of North Dakota.

March 15, 1979.

Raymond R. Rund, State's Atty., Finley, for plaintiff and appellee.

Mack, Moosbrugger, Ohlsen & Dvorak, Grand Forks, for defendant and appellant; argued by Richard A. Ohlsen, Grand Forks.

ERICKSTAD, Chief Justice.

The defendant, Lemuel James Larson, appeals from a judgment of conviction of the crime of theft of property. We reverse and remand for a new trial.

Larson was originally charged in Steele County through a complaint signed by Larry Goughnour dated the 22nd of June, 1977. The charge was that of theft of property in violation of Sections 12.1–23–02[1] and 12.1–23–05,[2] N.D.C.C.

The preliminary hearing on this complaint was held in County Justice Court of Steele County before the Honorable Arnold H. Johnson on September 2, 1977.

Following the preliminary hearing, Larson was bound over to district court and charged under a criminal information with the same offense. On April 19, 1978, he was arraigned before the district court, at which time Larson pled not guilty and requested a trial by the court. At the time of the arraignment, the court suggested May 22 or May 23 as possible trial dates.

By written motion dated April 28, 1978, the State's Attorney of Steele County

1. "A person is guilty of theft if he:

    *    *    *    *    *    *

"2. Knowingly obtains the property of another by deception or by threat with intent to deprive the owner thereof, or intentionally deprives another of his property by deception or by threat; . . . ." § 12.1–23–02, N.D.C.C.

2. "2. Theft under this chapter is a class C felony if:

a. The property or services stolen exceed one hundred dollars in value;" § 12.1–23–05(2)(a), N.D.C.C.

sought to secure an order from the district court authorizing the State to use the testimony of witness Goughnour submitted at the preliminary hearing of Larson as substantive evidence at Larson's trial. He asserted Goughnour was unavailable because he was employed in another state and it was not known where he would be on the date of the trial. On May 10, 1978, a hearing was held on this motion and at that time counsel for Larson argued against the use of the transcript of the preliminary hearing.

At the hearing on the application to use the transcript as substantive evidence, the State's Attorney informed the district court that he had been informed by the clerk of the court that she had learned from Goughnour's wife that Goughnour had arrived in Finley "the night before last and he is leaving".

The State's Attorney further informed the court that he didn't know where Goughnour was going, but that he was employed in conjunction with the construction of radar towers or transmission towers and that he would probably be going to New York or Florida. Near the conclusion of the hearing, the district court said:

"Under the circumstances I'll make the following order: That the transcript of the testimony of Mr. Goughnour may be used only in the event that if, on the date of trial, he is unavailable as a witness and that the State would be directed to have a summons prepared forthwith, *summons prepared for service on the date the trial.* And the reason that the Court does not wish to and does not feel in the exercise of its discretion that we should *subpoena*

*him as a material witness now and detain him 14 days* due to the nature of the witness' work at distances, that it would unduly jeopardize his employment to require his retention in the state for a period of two weeks between now and the time of the trial.

"The defendant's counsel has indicated a desire to have the Court view the witness in giving of his testimony at deposition or the one that could be made or the one that has been made might not be satisfactory. The defendant may depose the witness between now and the trial if he wishes to set up a notice of deposition and can arrange for the same between now and the trial, but it would be necessary to have a transcript available as well between that time.

"So the order is that the transcript may not be used unless Mr. Goughnour is not available at Finley on the 24th. If he is available on the 24th it may not be used and the Court will not order him detained as a material witness due to the nature of his employment between now and the date of the trial but that the defendant may, if he wishes on notice, depose Mr. Goughnour between now and the time of the trial, keeping in mind it would be necessary to have the transcript available at the time of trial." [3] [Emphasis added.]

Notwithstanding that counsel for the defendant asserted that he did not think that a subpoena issued and served immediately, requiring Goughnour's presence in court on May 24th would require the witness to stay within the state in the interim, the court adhered to its previous view and order.

---

3. The pertinent part of the written order executed by the court on May 11, 1978, reads:

"IT IS THEREFORE HEREBY ORDERED, as follows:

"1. That the testimony of the witness, Larry Goughnour, transcribed during the preliminary examination of the defendant, may be used as substantive evidence at the trial of the criminal charge of Theft of Property, against the defendant, if, at the time and date of the trial of said case, said witness is absent from the state of North Dakota.

"2. That the State issue a subpoena for the appearance of said witness, for the trial of said criminal charge against the defendant, dated May 24, 1978, and if the Sheriff of Steele County, North Dakota, finds that said Subpoena cannot be served on said witness on that day, in the State of North Dakota, and makes his Return showing the same, said transcribed testimony of said witness, taken at the preliminary examination of the defendant on said criminal charge, may be used as substantive evidence at and during said trial."

When the case was called for trial on the 24th of May, a subpoena directed to Goughnour on that day and attempted to be served on Goughnour on that day was returned on that day without being served upon Goughnour, apparently, because Goughnour was then out of the state. At the trial on that date, the testimony of Goughnour taken at the preliminary hearing was read into the record. Following the close of the trial the court found Larson guilty of the charge of theft of property and sentenced him to serve two years in the State Penitentiary.

On appeal, Larson contends that through the order issued by the district court and the ruling during trial permitting the State to use the transcript of the testimony submitted by witness Goughnour at the preliminary hearing as substantive evidence, he was denied his Sixth Amendment right to be confronted with the witnesses against him.[4]

He asserts that the Sixth Amendment to the United States Constitution has been made applicable to proceedings in the states by incorporation and application of the Fourteenth Amendment, and he recognizes that in the absence of a statute, a state court cannot require the attendance of a witness who is a non-resident of and is absent from the state.[5]

To remedy the problem of compelling witnesses to return to a state to testify once they have left the state, he asserts that the National Conference of Commissioners on Uniform State Laws adopted in 1931 the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Cases. 44 A.L.R.2d 732, 733.

North Dakota enacted a version of the Uniform Act in 1933. *See* S.L.1933, Ch. 217, § 1; § 31–0325 through 31–0331, N.D. R.C.1943, and presently Sections 31–03–25 through 31–03–31, N.D.C.C.

No effort was apparently made to utilize this Act in this case, partly because of the inadequate reimbursement provisions for mileage in Section 31–03–27.

Although it is agreed between the parties here today that the Act is applicable only as between two states which have both enacted it, this limiting factor does not appear to be the reason why the Act was not resorted to in the instant case.

Larson concedes that traditionally there has been an exception to the confrontation requirement where the witness is unavailable and has given testimony at previous judicial proceedings against the same defendant when that witness was subject to cross examination by that defendant. *Barber v. Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968). He, however, relies upon *Barber* in support of his contention that the State made insufficient effort to obtain the presence of Goughnour at the trial:

> "In short, a witness is not 'unavailable' for purposes of the foregoing exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial. The State made no such effort here, and, so far as this record reveals, the sole reason why Woods was not present to testify in person was because the State did not attempt to seek his presence. The right of confrontation may not be dispensed with so lightly." *Barber v. Page, supra,* 390 U.S. at 724–25, 88 S.Ct. at 1322, 20 L.Ed.2d at 260.

In *Barber*, a codefendant gave testimony at the preliminary hearing that incriminated the petitioner. At the time the petitioner was brought to trial, the codefendant was incarcerated in a federal penitentiary in Texarkana, Texas, about 225 miles from

---

4. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be con-

fronted with the witnesses against him; to have compulsory process for obtaining Witnesses in his favor, and to have the Assistance of Counsel for his defence." U.S.Const. amend. VI.

5. *See* 44 A.L.R.2d 732, 733.

the trial court in Oklahoma. At the trial, the court allowed the transcript of the codefendant's testimony at the preliminary hearing in as evidence over the objection of the petitioner. The jury found the petitioner guilty and upon appeal the Oklahoma Court of Criminal Appeals affirmed the conviction. The petitioner then sought federal habeas corpus, claiming that the use of the transcript of the codefendant's testimony in his state trial deprived him of his federal constitutional right to confrontation in violation of the Sixth and Fourteenth Amendments. His contention was rejected by the district court and on appeal the Circuit Court of Appeals for the Tenth Circuit, one judge dissenting, affirmed. The United States Supreme Court granted certiorari to consider the petitioner's denial of confrontation claim and reversed the conviction.

In the instant case, an error resulted from the view that there were only two reasonable alternatives: (1) that the court subpoena Goughnour as a material witness and detain him 14 days for the trial on the 24th, or (2) that a subpoena be issued on the 24th for service upon Goughnour on the 24th to be present for trial on the 24th.

The latter is the course which the court took, apparently believing the first to be too drastic. Actually, at least one other alternative was available. An attempt should have been made on the day the witness was discovered to be present within the court's jurisdiction to serve the witness with a subpoena requiring him to be present at the trial on the 24th. Such a subpoena would not have detained the witness within the court's jurisdiction pending the date of the trial. Under the circumstances, we believe that effort was the least effort that should have been made to secure the attendance of the witness on the 24th.

Nothing in *State v. Erickson*, 241 N.W.2d 854 (N.D.1976), *State v. Jacob*, 222 N.W.2d 586 (N.D.1974), or in Rule 804(a)(5), N.D.R. Ev., to which we have been referred by the State, requires a contrary result.

*State v. McCarty*, 49 N.D. 912, 194 N.W. 335 (1923), because of its vintage, having been decided prior to the adoption of the Uniform Act and prior to more recent decisions of this court and of the United States Supreme Court, is unpersuasive.

We accordingly reverse the judgment of the trial court and remand the case for a new trial consistent with the views expressed in this opinion. Should it be contended by the State on remand that Goughnour is still unavailable, it is recommended that evidence on that issue be submitted to the trial court to establish his unavailability, and that proof thereof not rest upon argument of counsel.

SAND, PAULSON and VANDE WALLE, JJ., concur.

PEDERSON, Justice, dissenting.

That guarantee in the Sixth Amendment which is the heart of Lemuel Larson's argument in this case is an assurance that "in all criminal prosecutions, the accused shall . . . be confronted with the witnesses against him . . . ." The transcript of the preliminary hearing discloses that Larson and his counsel were "confronted" by Witness Goughnour through 38 pages of testimony—17 of which were cross-examination. Confrontation is not the lacking item.

The State commendably disclosed to the court and to the defendant before trial that ordinary efforts to have Goughnour present at the trial would probably be futile. Through roughshod treatment of the witness, it is obvious that Goughnour could have been made to appear and testify at the trial. It could have been done entirely within the rules, albeit Goughnour may have suffered significant financial sacrifice or maybe a loss of his job. I believe that judges have an obligation to not let the judicial system do that to anyone.

The majority opinion overreaches in applying *Barber v. Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968). In *Barber*, counsel did not cross-examine the witness during the preliminary hearing and the State made no effort to obtain the presence of the witness at trial. There would have

been no sacrifice for that witness to have been required to appear; he was in a federal prison a comparatively short distance from where the trial was being held. It would be my guess that the United States Supreme Court would have based its opinion in *Barber* upon due process as contended by Justice Harlan, if anything, had there been cross-examination at the preliminary hearing. Here, Larson doesn't argue due process.

There are some practical consequences—some good and some bad—that could flow from the holding by the majority. First, it might result in a more readily acceptable use of depositions in criminal cases as contemplated by Rule 15(e) and (g), NDRCrimP, and I think that would be good. Second, it might—as suggested by the state's attorney—result in the prosecutors sitting on problems that they know exist and drop them like a bomb on the day of the trial. No one should want to encourage that, but some writers contend, for example, that the exclusionary rule accomplishes just that kind of result. See *The Exclusionary Rule: Why Suppress Valid Evidence?*, by Malcolm Richard Wilkey, Judicature, The Journal of the American Judicature Society, Vol. 62, No. 5 (Nov. 1978).

The failure of the State to select the best option, as viewed by hindsight, to present Goughnour's testimony in the fairest way under all the circumstances was, at best, a technical error that prevented Larson from having a perfect trial but did not prevent him from having a fair trial. See my dissent in *State v. Pfister*, 264 N.W.2d 694, 700 (N.D.1978).

The error was harmless beyond reasonable doubt. Rule 52(a), NDRCrimP. I see no likelihood that a retrial will change the result.