STATE of North Dakota,
Plaintiff/Appellee,

v.

Douglas BOUSHEE,
Defendant/Appellant.

Cr. No. 681.

Supreme Court of North Dakota.

Sept. 26, 1979.

Rehearing Denied Oct. 11, 1979.

Murray, Olson, Larivee & Bohlman, Grand Forks, for defendant/appellant; argued by Bruce E. Bohlman, Grand Forks.

Thomas B. Jelliff, Sp. Counsel, Grand Forks, for plaintiff/appellee.

PAULSON, Justice.

The defendant, Douglas Boushee ["Boushee"], brought this appeal from a judgment of conviction from the Grand Forks County District Court. The case was tried to a jury which found Boushee guilty of the crime of possession of marijuana with intent to deliver, in violation of §§ 19–03.1–05(4)(m), 19–03.1–23(1)(b), and 12.1–32–01(2) of the North Dakota Century Code.[1] Boushee was sentenced to five years' imprisonment in the State Penitentiary, with two years suspended upon payment of a $5,000 fine. The jury acquitted Boushee on two other related charges. We affirm.

Boushee is a farmer in the Emerado area. He has admittedly used marijuana for the past ten years and has smoked about three to four ounces per month. On the afternoon of February 23, 1978, at about 4:00 p. m., he left his trailer home on the farm and drove to the Red Dog Saloon in Larimore to drink with some friends. Before leaving home he smoked two marijuana cigarettes or "joints". The marijuana was homegrown by Boushee and some friends and is of a variety commonly known as "ditch weed".

After leaving home, Boushee "lit up" another joint and drove to the Red Dog Saloon in Larimore. He arrived there about 5:00 p. m. and drank whiskey and rum for about two hours with a friend. Around 7:00 p. m., Boushee and some friends left the bar and drove out into the country and smoked three more marijuana cigarettes. They returned to the Red Dog Saloon about 7:45 p. m., and Boushee drank whiskey and coke or rum and coke for another two hours.

Boushee then left the Red Dog Saloon and drove to Bump's Bar in Arvilla to watch a pool tournament. He smoked another joint of marijuana on the way. He was drinking beer and watching the pool tournament when he received a call from Jeannie Cole, the wife of his friend Raymond Cole. She told him that she wanted to purchase two pounds of marijuana for some friends from Devils Lake. Boushee was reluctant to sell it to her, saying he did not have that much available and urging

---

1. Section 19–03.1–05(4)(m), N.D.C.C., provides:
   "*19–03.1–05. Schedule I.*—The controlled substances listed in this section are included in schedule I.

   .   .   .   .   .

   "4. Any material, compound, mixture, or preparation which contains any quantity of the following hallucinogenic substances, their salts, isomers, and salts of isomers, unless specifically excepted, whenever the existence of these salts, isomers, and salts of isomers is possible within the specific chemical designation:

   .   .   .   .   .

   "m. Marijuana."
   Section 19–03.1–23(1)(b), N.D.C.C., provides in pertinent part:
   "*19–03.1–23. Prohibited acts A—Penalties.*—1. Except as authorized by this chapter,

   it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver a controlled substance  .   .   .   .
   Any person who violates this subsection with respect to:

   .   .   .   .   .

   "b. any  .   .   . controlled substance classified in schedule I, II, or III, is guilty of a class B felony;"
   Section 12.1–32–01(2), N.D.C.C., provides:
   "*12.1–32–01. Classification of offenses—Penalties.*—Offenses are divided into six classes, which are denominated and subject to maximum penalties, as follows:

   .   .   .   .   .

   "2. Class B felony, for which a maximum penalty of ten years' imprisonment, a fine of ten thousand dollars, or both, may be imposed."

her to get it from one of Raymond's other "connections". He told her he didn't want to be hassled because he was "pretty hammered or drunk" but he finally agreed to meet her at Johnny's Bar in Emerado.

Boushee smoked another marijuana cigarette on the way to Emerado and arrived at Johnny's Bar some time shortly after midnight. He was talking with some friends when Jeannie Cole entered with two men whom she introduced to Boushee as her "friends" from Devils Lake (the two men were actually undercover agents Jerald Kemmet and C. Daniel Smith of the North Dakota Attorney General's Drug Enforcement Unit). After some discussion, Boushee agreed to "scrape together" about a pound of marijuana.

Boushee and Mrs. Cole left the bar together and he drove to his farm to get the marijuana. He proceeded to assemble a pound of marijuana by mixing some fragments of the drug kept in an old soap box with some leaves and stalks torn from a marijuana plant which he found in a grain bin. He then placed this mixture in a ziplock bag. Boushee and Mrs. Cole then returned to the bar in Emerado where the two agents were waiting. Boushee stopped his pickup in the street in front of the bar. Agent Smith approached the truck and Boushee handed him the marijuana. Smith asked Boushee how much money he wanted and Boushee replied $120. At that point the agents arrested Boushee.

After the arrest, the two agents and other police officers went to Boushee's home and conducted a search pursuant to a warrant issued by the Grand Forks County Court of Increased Jurisdiction. The officers seized several items, including a trash bag found outside the door of the trailer home containing nine pounds of marijuana, a "hash-oil making machine",[2] and various smoking devices and other paraphernalia.

The defendant was charged in three Informations with the following:

(1) Information 7316 charged Boushee with Possession of Marijuana with Intent to Deliver. This charge derived from the seizure of the nine-pound bag of marijuana found outside of Boushee's trailer home during the search made on February 24, 1978, at approximately 3:30 a. m., pursuant to the warrant.

(2) Information 7317 charged Boushee with Possession of Marijuana with Intent to Deliver. This charge involved the one pound of marijuana which Boushee sold to Agent Smith at 1:30 a. m. in front of Johnny's Bar, at Emerado, at a price of $120 on the 24th of February, 1978.

(3) Information 7318 charged Boushee with the crime of Manufacture and Possession with Intent to Manufacture or Deliver a Controlled Substance. This Information charged Boushee with possession of a hash-oil making machine with chemicals and vials for the refinement and preparation of hash oil, along with several vials of refined resin (hash oil), which were found in the search at his trailer home at 3:30 a. m. on February 24, 1978.

The three Informations were consolidated for trial. The jury acquitted Boushee on Information 7316 and Information 7318, but returned a verdict of guilty on Information 7317. It is from this conviction that Boushee appeals.

I.

MOTION TO SEPARATE TRIALS

The first issue raised on appeal is whether or not the trial court erred in denying Boushee's motion to separate the trials. Boushee concedes that the decision of the trial court to consolidate Informations for trial would be reversible error only if there was a clear abuse of discretion by the trial judge. However, Boushee contends that there was an abuse of discretion shown by the prejudice that resulted to Boushee by consolidation of the Informations.

---

2. An isomerizer.

The trial judge consolidated the actions in accordance with Rules 8 and 13 of the North Dakota Rules of Criminal Procedure. Rule 8(a), N.D.R.Crim.P., provides:

"(a) Joinder of offenses. Two or more offenses may be charged in the same indictment, information, or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

Rule 13, N.D.R.Crim.P., provides:

"The court may order two or more indictments, informations, or complaints to be tried together if the offenses and the defendants, if there is more than one, could have been joined in a single indictment, information, or complaint. The procedure shall be the same as if the prosecution were under a single indictment, information, or complaint."

As this court said in *State v. Gann*, 244 N.W.2d 746, 750–751 (N.D.1976):

"Consolidation is proper under Rule 13 in any cases where the offenses charged in the separate indictments or informations could have been joined in a single charge under Rule 8(a). However, under Rule 13 the court has discretion to deny consolidation, even though joinder would have been proper under Rule 8 if there is any doubt about the fairness of the trial. Although the scope of Rules 8(a) and 13 is the same and is determined by Rule 8(a), the grounds for their exercise are different.

. . . . .

"Consolidation of indictments for trial is reversible error only where there is a clear abuse of discretion."

*See United States v. Harris*, 211 F.2d 656 (7th Cir. 1954), *cert. denied*, 348 U.S. 822, 75 S.Ct. 34, 99 L.Ed. 648; *State v. Berger*, 234 N.W.2d 6 (N.D.1975); *State v. Erickson*, 231 N.W.2d 758 (N.D.1975).

Boushee contends that there has been an abuse of discretion because consolidation has resulted in prejudice to him. Rule 14, N.D.R.Crim.P., provides for relief from prejudicial joinder as follows, in pertinent part:

"If it appears that a defendant or the prosecution is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever relief justice requires. . . ."

The trial judge determined not to grant a severance because all of the cases were of the same or similar character, the same witnesses would be testifying, all of the charges were drug-related and connected together by the sole identity of the defendant, and the closeness in time and place in which they were committed. He also found that the offenses indicated a common scheme or plan to distribute marijuana. The essence of Boushee's argument is that consolidation of the three Informations would tend to confuse the jury. However, the jury in this case indicated its ability to keep the evidence separate by the fact that it was able to acquit Boushee on two of the three consolidated charges.

As the Second Circuit Court of Appeals said in *United States v. Borelli*, 435 F.2d 500, 502 (2d Cir. 1970), *cert. denied*, 401 U.S. 946, 91 S.Ct. 963, 28 L.Ed.2d 229 (1971) "he [the defendant] must demonstrate substantial prejudice from a joint trial, not just a better chance of acquittal at a separate one, and . . . a trial court's refusal to grant severance will rarely be disturbed on review". A similar position has been adopted by the Seventh Circuit Court of Appeals in *United States v. Tanner*, 471 F.2d 128, 137 (7th Cir. 1972), *cert. denied*, 409 U.S. 949, 93 S.Ct. 269, 34 L.Ed.2d 220.

The defendant bears the difficult burden of demonstrating that he has been prejudiced by joinder. He must show something more than the mere fact that a separate trial would have afforded a better chance

of acquittal. Joinder must be shown to have rendered the trial unfair.

We determine that consolidation in the instant case has not caused a result unfair to Boushee. This is in accordance with our decision in *State v. Gann, supra,* 244 N.W.2d 746. In *Gann,* defendant was arrested for a robbery at a Taco John's store in Grand Forks. The investigating officer noticed similarities between the Taco John's robbery and a robbery at the Sweet Clover Dairy three weeks earlier. Because of similarities in the *modus operandi* the two trials were consolidated. Defendant took the stand and admitted he had committed the robbery at Taco John's, but denied having anything to do with the Sweet Clover Dairy holdup. The jury found him guilty of the Taco John's robbery but could not agree on a verdict on the Sweet Clover Dairy charge. On appeal, defendant contended that consolidation of the two cases was prejudicial error. This Court stated, in *Gann, supra* 244 N.W.2d at 751:

> "If the defendant claims that a joinder, permissible under Rule 8 [N.D.R.Crim.P.], is nevertheless prejudicial and that relief should be granted under Rule 14 [N.D.R. Crim.P.], the matter is addressed to the discretion of the trial court and a conviction will be reversed only if the refusal of the trial court to grant relief was a clear abuse of discretion."

■ The purpose for the Rule permitting consolidation is to promote judicial convenience and economy. A court must weigh the prejudice to the defendant caused by joinder against the obviously important considerations of economy and expedition in judicial administration. *Drew v. United States,* 118 U.S.App.D.C. 11, 331 F.2d 85 (D.C.Cir. 1964). The defendant in the instant case contends that he was prejudiced by the consolidation because evidence admissible to prove the prosecution's case in Information 7316 would have been inadmissible to prove Information 7317 if the charges were tried separately. The contention is that the jury was "shocked" by the presence of the nine pounds of marijuana [Information 7316] into convicting on the

sale in Information 7317. This argument is unpersuasive in light of the fact that the jury was able to sort through the evidence and acquit on two of the three charges. The jury had ample evidence to support the conviction, based on the testimony of the prosecution witnesses and the defendant himself, independent of evidence presented on the other two charges.

■ Boushee also contends that consolidation confounded the presentation of his defenses because it affected his choice of whether or not to take the stand. His defense to Information 7317 was entrapment and this defense is what motivated him to take the stand. It is difficult to see how his decision to take the stand was prejudiced by the consolidation when he was convicted of the very charge for which he decided to take the stand. His argument is that his defense of entrapment was frustrated by the fact that the jury would think he was predisposed to commit the offense charged in Information 7317 by the presence of the evidence admitted in connection with the other two charges. This is merely another way of stating the earlier argument regarding jury confusion which has been previously discussed in this opinion.

■ All three of Boushee's arguments: (1) that the jury may confuse and cumulate the evidence; (2) that the defendant may be confounded in presenting his defenses; and (3) that proof of defendant's guilt of one offense may be used to convict him of another offense even though proof of that guilt would have been inadmissible at a separate trial, are rarely, if ever, grounds for reversal where the consolidated charges arise out of the same transaction. See 1 Wright, Federal Practice and Procedure, Criminal Law § 222; *Johnson v. United States,* 356 F.2d 680 (8th Cir. 1966), *cert. denied,* 385 U.S. 857, 87 S.Ct. 105, 17 L.Ed.2d 84 (1966); *Drew v. United States,* 118 U.S.App.D.C. 11, 331 F.2d 85 (D.C.Cir. 1964); and *United States v. Jardan,* 552 F.2d 216 (8th Cir. 1977), *cert. denied* 433 U.S. 912, 97 S.Ct. 2982, 53 L.Ed.2d 1097. Because all of the charges against Boushee stemmed from the same transaction, no

prejudice resulted to Boushee by the consolidation of the three Informations for trial. We conclude that there was no abuse of discretion in refusing to grant the motion for severance.

## II.

### SUPPRESSION MOTION

The second issue raised on appeal is that the trial court erred in denying Boushee's motion to suppress evidence seized during the search of Boushee's trailer home conducted pursuant to a warrant issued by the Grand Forks County Court of Increased Jurisdiction on or about February 23, 1978. The warrant was supported by two affidavits. One was the affidavit of Jeannie Cole, the other that of Jerald Kemmet.

■ Boushee's first contention is that the warrant was issued based on the Kemmet affidavit alone. It is true that the warrant mentioned only the Kemmet affidavit, but it is equally true that the magistrate issuing the warrant had the Cole affidavit in front of him when he issued the warrant. The signed affidavit of Cole was attached immediately in front of the Kemmet affidavit. The trial judge, in denying the suppression motion, determined that the omission of Cole's name in the warrant was merely a typographical error.

As this court recently said in *State v. Mertens*, 268 N.W.2d 446, 448 (N.D.1978):

"In determining whether or not the affidavit establishes the required probable cause for a search warrant, we apply practical rather than abstract concepts. The magistrates and the courts interpret the affidavits in a commonsense and realistic fashion."

It is especially true that a reviewing court should examine the affidavits and the information available to the magistrate in a commonsense and realistic fashion as opposed to a hypertechnical manner. In *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965), the United States Supreme Court stated:

". . . [C]ourts should not invalidate [a] warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner."

It is important to note that the warrant was issued by a neutral and detached magistrate in the instant case. This magistrate was more than a mere "rubber stamp" for the police. *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). A reviewing court will pay "substantial deference to judicial determinations of probable cause" where the magistrate is "neutral and detached". *Aguilar, supra*; *State v. Mertens*, 268 N.W.2d 446, 448 (N.D.1978). A finding of probable cause will depend upon the circumstances of each case (*Mertens, supra* 268 N.W.2d at 450), but the evidence necessary to establish probable cause is less than that required to establish guilt at trial. See Vol. 8A, Moore's Federal Practice and Procedure ¶ 41.37. The affidavits of Kemmet and Cole, read together, would certainly justify the magistrate's finding of probable cause.

■ Boushee next contends that the two affidavits are inadequate on their face. He attacks the Cole affidavit because it does not indicate whether or not she has had any experience in identifying marijuana. This defense argument is again asking the court to read the affidavit in a hypertechnical rather than a commonsense manner. *See* discussion in *State v. Mertens, supra*. There is no requirement that an affiant for a search warrant be an expert in identifying marijuana, as long as the magistrate is apprised of the underlying circumstances which support the affiant's conclusion that the substance is marijuana. *See, generally, United States v. Ventresca, supra* 380 U.S. at 108, 85 S.Ct. 741. The affidavit did indicate that Affiant Cole had accompanied her husband on numerous occasions when he purchased a substance which she believed to be marijuana at the residence of Boushee. If the magistrate was not sufficiently satisfied from the contents of the affidavits that Mrs. Cole could identify marijuana, he could have required the affiants to appear personally and testify under oath. Rule 41(c), N.D.R.Crim.P. The fact that he did not do so indicates that he was

satisfied that probable cause existed on the face of the affidavits. We hold that the affidavits of Kemmet and Mrs. Cole, read together, were adequate on their face to justify the magistrate's determination that probable cause existed to issue the search warrant.

■ Boushee next contends that the information given the magistrate was stale, because the Cole affidavit indicated that the last time she saw marijuana at Boushee's residence was some nine to eleven weeks earlier. However, the affidavits did apprise the magistrate of the continuous nature of Boushee's drug operation and of sales as recent as three days prior to the issuance of the warrant. Under these circumstances, we cannot say that the information was so stale as to invalidate the warrant.

■ Boushee also attacks the credibility of the informant, Jeannie Cole. He urges the court to apply the test espoused in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); expanded upon in *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); and adopted by this court in *State v. Dove*, 182 N.W.2d 297 (N.D.1970). That test is to be used in situations where the affidavit is based upon hearsay information obtained from an anonymous informer. *See State v. Dove, supra.* Citizen informers are presumed reliable. *Jaben v. United States*, 381 U.S. 214, 85 S.Ct. 1365, 14 L.Ed.2d 345 (1964). In the instant case, there was no hearsay problem because Jeannie Cole signed and swore to the affidavit and was available for questioning by the magistrate. In addition, her affidavit may be even more reliable due to the fact that it contained information which would inculpate her spouse. The situation is analogous to *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971), where the United States Supreme Court recognized that a statement against penal interest made by an undisclosed informer in an affidavit would induce a prudent and disinterested observer to credit such a statement and would furnish sufficient probable cause for a search.

■ Boushee also attacks the seizure of the nine-pound bag of marijuana found outside the trailer during the search made on February 24. This argument is based on the fact that the warrant authorized a search of the Boushee residence and the marijuana was found about five feet away from his trailer home. Because the search was authorized and the bag of marijuana was found in a place within the plain view of the officers conducting the search, its seizure was proper. *Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968). The case of *Fixel v. State*, 256 So.2d 27 (Fla.App.1971), is also persuasive. In *Fixel*, the Florida court upheld the seizure of contraband outside of the defendant's residence where the search warrant described the area to be searched as the residence of the defendant. We hold that this seizure was not improper.

## III.

### MOTION TO PRODUCE WITNESS

■ The third issue Boushee raises on appeal is whether or not the trial court erred in denying Boushee's motion to require the prosecution to produce the witness Jeannie Cole. The State listed Jeannie Cole on a list of additional witnesses which it intended to call. The State never called Jeannie Cole and she never appeared at trial or at the preliminary hearing. The only time she appeared in this case was as an affiant for the search warrant.

Rule 7(g), N.D.R.Crim.P., requires the prosecuting attorney to endorse the names of the witnesses he intends to call. Rule 7(g) provides:

"*(g) Names of witnesses to be endorsed on indictment or information.* When an indictment or information is filed, the names of all the witnesses on whose evidence the indictment or information was based shall be endorsed thereon before it is presented, and the prosecuting attorney shall endorse on the indictment or information, at such time as the court by rule or otherwise may prescribe, the

names of such other witnesses as he proposes to call. A failure so to endorse the said names shall not affect the validity or sufficiency of the indictment or information, but the court in which the indictment or information was filed, upon application of the defendant, shall direct the names of such witnesses to be endorsed. No continuance shall be allowed because of the failure to endorse any of the said names unless such application was made at the earliest opportunity and then only if a continuance is necessary in the interests of justice."

The text of Rule 7(g), N.D.R.Crim.P., does not indicate whether the prosecutor is required to call every witness that he lists. Prior to the adoption of Rule 7(g), § 29–11–57, N.D.C.C. [1939 S.L., Ch. 132], provided for the endorsement of witnesses on an information. When the Rules of Criminal Procedure were adopted, the Supreme Court superseded § 29–11–57, N.D.C.C., with Rule 7(g), N.D.R.Crim.P., which is nearly identical in language. In *State v. Ave*, 74 N.D. 216, 21 N.W.2d 352 (1946), a case decided at a time when § 29–11–57, N.D.C.C., was in effect, this court ruled that the State is not required to call as its witness everyone whose name is endorsed on an information. We hold that the prosecution is not required to call a witness whose name is endorsed on the information when that witness did not testify at the preliminary hearing and is not present within the borders of the State. If Boushee believed that Jeannie Cole's presence was necessary to his defense, he should have made a greater effort to produce her himself.

Boushee contends that the failure of the prosecution to produce Jeannie Cole denied him his Sixth Amendment right to be confronted with the witnesses against him. U.S.Const. amend. VI; *State v. Larson*, 277 N.W.2d 120 (N.D.1979), is relevant to this contention. In *Larson, supra*, the prosecution did not attempt to discover a witness within the court's jurisdiction and serve him with a subpoena requiring his attendance at trial. We held that use at trial of the testimony given by the witness at the pre-

liminary hearing denied defendant his Sixth Amendment right to be confronted with the witnesses against him. *Larson* is distinguishable for several reasons from *Boushee*. In *Larson*, the witness was present in the jurisdiction, he testified at the preliminary hearing, and the testimony given at the preliminary hearing was introduced at trial. In the instant case, Jeannie Cole was not within the jurisdiction, never testified at any stage of the proceeding, and nothing she said was used against Boushee at trial. In fact, the trial judge instructed the jury that they were to assume that the testimony of Jeannie Cole would not have been helpful to the prosecution.

*State v. Erickson*, 241 N.W.2d 854 (N.D. 1976), is also relevant. In *Erickson, supra*, the defendant contended that the failure of the State to find a witness denied his right to be confronted with the witnesses against him. The testimony of one Thomas Adams was taken at the preliminary hearing. Defense counsel had an opportunity to cross-examine Adams at the preliminary hearing but failed to exercise his right to do so. Adams could not be found at the time of the trial and his testimony at the preliminary hearing was admitted at trial. We held that the prosecutor was not required to produce Adams at trial because "All that is required of the State is that it make a reasonable, good faith effort to locate a witness". *Erickson, supra*, 241 N.W.2d at 862. Whether or not the State has made a good faith effort to locate a witness is within the discretion of the trial court. *Erickson, supra*, 241 N.W.2d at 863. We will not reverse a discretionary ruling by a trial judge absent clear prejudice to a substantial right. Rule 52(a), N.D.R.Crim.P. *See State v. Hager*, 271 N.W.2d 476 (N.D.1978). In order to be prejudicial, the error must be such that it must in all probability have had some effect on the jury's verdict. *State v. Manning*, 134 N.W.2d 91 (N.D.1965). We do not believe that the testimony of Jeannie Cole would have affected the jury verdict because it would only have been cumulative of the testimony already presented by the prosecution. This is consistent with our

holding in *State v. Smith*, 238 N.W.2d 662, 666–667 (N.D.1976), where we held that a party is not required to produce a witness where his testimony would be only cumulative or where the witness is equally available to either party. In *Smith, supra*, we even went so far as to hold that no adverse inference can be drawn from the failure to produce the witness. We conclude that the trial court did not abuse its discretion in denying defendant's motion to produce the witness Jeannie Cole.

## IV.

## CONSTITUTIONALITY OF CHAPTER 19–03.1, N.D.C.C.

■ The fourth issue raised on appeal is whether or not the trial judge erred in denying Boushee's motion to dismiss on the grounds that Chapter 19–03.1, N.D.C.C., is unconstitutional. This is basically a two-pronged argument. The first prong is that the statutes make an unreasonable classification by placing marijuana in the same category as other Schedule I substances, such as opium, heroin, and L.S.D. This argument is based on the premise that the state of scientific knowledge is sufficiently advanced to permit the conclusion that marijuana is less dangerous than drugs having a "higher potential for abuse". It is not the province of this court to weigh the opposing scientific opinions and decide whether or not marijuana is more or less harmful than other drugs are. That is the province of the legislature and we will not interfere with legislative factfinding unless it appears to be clearly erroneous and without reasonable foundation. *Ferch v. Housing Authority of Cass County*, 79 N.D. 764, 59 N.W.2d 849 (1953). The legislature has broad discretion in making classifications. *Signal Oil and Gas Co. v. Williams County*, 206 N.W.2d 75, 83 (N.D.1973). This court will not substitute its judgment for that of the legislative body which has the primary duty and responsibility of determining a question where the question is fairly debatable. So long as the statute bears a rational relationship to a legitimate state objective it will be upheld. *Newman Signs, Inc.*

*v. Hjelle*, 268 N.W.2d 741, 758 (N.D.1978); *Tharaldson v. Unsatisfied Judgment Fund*, 225 N.W.2d 39 (N.D.1974). There is certainly a legitimate state objective involved where the police power is invoked to control drug abuse.

■ The second prong of Boushee's constitutional argument is that Chapter 19–03.-1, N.D.C.C., is in violation of the Equal Protection and Due Process Clauses of the United States Constitution and of Section 20 of the Declaration of Rights of the North Dakota Constitution because Chapter 19–03.1, N.D.C.C., grants a special privilege or immunity to users of tobacco and alcohol which it denies users of marijuana. This argument is unpersuasive. Chapter 19–03.1 treats all citizens equally in classifying marijuana as a Schedule I controlled substance. Although there is some line drawing in every legislative determination, only invidious discrimination is prohibited by the Equal Protection Clause of the Fourteenth Amendment. *Christman v. Emineth*, 212 N.W.2d 543 (N.D.1973). Because Chapter 19–03.1, N.D.C.C., bears a reasonable relationship to the legitimate state police power objective of providing for the public health and welfare, Boushee has failed to bear his burden of convincing us that it should be struck down as unconstitutional under either the Federal or State Constitution.

## V.

## ENTRAPMENT

■ The fifth issue raised on appeal is whether or not the trial judge erred in refusing to give Boushee's requested instruction on entrapment. Boushee objected to the use of the words "normally law-abiding persons" by the trial judge in his instruction on entrapment. Boushee's argument is that because he took the stand and admitted to being a regular drug user, the jury was unable to view him as being a "normally law-abiding person". Boushee requested that the instruction use the words "normally law-abiding drug user".

North Dakota uses the "normally law-abiding person" test of entrapment. *State*

*v. Mees*, 272 N.W.2d 284, 288 (N.D.1978). The entrapment statute is set out in § 12.1–05–11, N.D.C.C., which provides:

> "*Entrapment.*—1. It is an affirmative defense that the defendant was entrapped into committing the offense.

> "2. Entrapment occurs when a law enforcement agent induces the commission of an offense, using persuasion or other means likely to cause normally law-abiding persons to commit the offense. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment."

> "3. In this section 'law enforcement agent' includes personnel of federal and local law enforcement agencies as well as state agencies, and any person cooperating with such an agency."

The essence of Boushee's argument is that because he is an admitted drug user, the language contained in the instruction, that is, "normally law-abiding persons" would cause the jury to concern itself with his predisposition to commit the offense.

This argument is similar to the one made by the defendant in the case of *State v. Folk*, 278 N.W.2d 410 (N.D.1979), wherein she advanced the argument that defendants in narcotics cases who wish to raise the entrapment defense "almost always" have to take the stand and admit to using controlled substances. This provides the prosecutor with an opportunity to make a devastating argument that the defendant has admitted that he or she is not a "normally law-abiding person". We held that the instruction was proper. As we stated in *Folk*, *supra* 278 N.W.2d at 414:

> "An instruction on entrapment under present North Dakota law, which would omit reference to 'law-abiding persons' when evaluating the 'persuasion or other means utilized,' might be erroneous. Instructions which fairly inform the jury of the law that must be applied is all that is required. A court need not give instructions in the specific language requested by the defendant." [Citing *Wasem v. Laskowski*, 274 N.W.2d 219, 226 (N.D. 1979); and *Nokota Feeds, Inc. v. State*

*Bank of Lakota*, 210 N.W.2d 182 (N.D. 1973)].

The defense has the burden of proving entrapment [*State v. Pfister*, 264 N.W.2d 694 (N.D.1978)], and Boushee has not met that burden.

## VI.

### THE PROPER TIME FOR RULING ON ADMISSIBILITY OF AN ACCUSED'S PRIOR CONVICTION

The sixth issue raised on appeal is whether or not Boushee was entitled to a ruling before taking the witness stand on the admissibility of his prior conviction of distributing controlled substances. He contends that the court's refusal to make such a ruling had a significant effect on his trial strategy. He was put in a position where he had to take the stand and put the prior conviction into evidence on direct examination, rather than let it come out in a devastating manner during cross-examination.

Rule 609(a), of the North Dakota Rules of Evidence provides, in pertinent part:

> "*(a) General rule.* For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant . . . ."

This Rule requires the trial judge to determine whether the probative value of admitting the evidence outweighs its prejudicial effect. Prior to the adoption of Rule 609(a), N.D.R.Ev., evidence of any criminal conviction was admissible in North Dakota. *State v. Moe*, 151 N.W.2d 310 (N.D.1967). Rule 609(a) requires the balancing of several factors and is derived from the holding in *Luck v. United States*, 121 U.S.App.D.C. 151, 348 F.2d 763 (D.C. Cir. 1965). In *Gordon v. United States*, 127 U.S.App.D.C. 343, 383 F.2d 936 (D.C. Cir. 1967), *cert. denied* 390 U.S. 1029, 88 S.Ct. 1421, 20 L.Ed.2d 287

(1968), the Court of Appeals for the District of Columbia Circuit had an opportunity to expound on the *Luck* rule. Judge Burger, now Chief Justice, listed the following factors which the trial judge should consider in determining whether to admit a prior conviction:

(1) The nature of the crime.

(2) The time of the conviction and the witness's subsequent history.

(3) Similarity between the past crime and the charged crime.

(4) Importance of the witness's testimony.

(5) The centrality of the credibility issue.

Consideration of these factors becomes even more important where the witness is the accused. As McCormick has said in his treatise on evidence, McCormick on Evidence § 43, at 89 (2d Ed.1972, 1st Rep.1973):

"The sharpest and most prejudicial impact of the practice of impeachment by conviction . . . is upon one particular type of witness, namely, the accused in a criminal case who elects to take the stand. If the accused is forced to admit that he has a 'record' of past convictions, particularly if the convictions are for crimes similar to the one on trial, there is an obvious danger that the jury, despite instructions, will give more heed to the past convictions as evidence that the accused is the kind of man who would commit the crime on charge, or even that he ought to be put away without too much concern with present guilt, than they will to the legitimate hearing of the past convictions on credibility. The accused, who has a 'record' but who thinks he has a defense to the present charge, is thus placed in a grievous dilemma. If he stays off the stand, his silence alone will prompt the jury to believe him guilty. If he elects to testify, his 'record' becomes provable to impeach him, and this again is likely to doom his defense. Where does the balance of justice lie?"

In courts where Rule 609(a) is in effect, the answer to the question posed by *McCormick* is in a balancing of the possible prejudice against the probative value of the conviction as to credibility. The introduction of the prior conviction is in the discretion of the trial judge. *See Gordon v. United States, supra.*

Boushee's prior conviction was for the similar crime of distribution of controlled substances. The federal courts have split on whether a narcotics conviction is of a type which indicates a propensity for dishonesty or false statement. *Compare United States v. Ortiz,* 553 F.2d 782, 784 (2d Cir. 1977), *cert. denied* 434 U.S. 897, 98 S.Ct. 277, 54 L.Ed.2d 183 (a trial judge in his discretion was entitled to recognize that a narcotic trafficker lives a life of secrecy and dissembling and is prepared to say whatever is required by the demands of the moment, whether a truth or a lie) *with United States v. Millings,* 175 U.S.App.D.C. 293, 535 F.2d 121 (D.C. Cir. 1976) (such a conviction does not evince a lack of character or disregard for all legal duties). Each case must be decided on its own facts. *See generally* 3 Weinstein's Evidence ¶ 609[03a] fn. 10.

In the instant case, Boushee introduced his prior conviction in evidence on direct examination as a matter of trial strategy. Therefore, the trial judge was never required to make a Rule 609(a) ruling because the prior conviction was not used for impeachment purposes. The essential point of Boushee's argument is that he was entitled to such a ruling at a time prior to his being sworn in as a witness. Boushee cites Rules 103(c) and 104(c), N.D.R.Ev., as authority for this proposition.

Rule 103(c), N.D.R.Ev., provides:

"RULE 103

"RULINGS ON EVIDENCE

"*(c) Hearing of jury.* In jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements or offers of proof or asking questions in the hearing of the jury."

"RULE 104

"PRELIMINARY QUESTIONS

"*(c) Hearing of jury.* Hearings on the admissibility of confessions in criminal

cases shall be conducted out of the hearing of the jury. *Hearings on other preliminary matters in all cases shall be so conducted whenever the interests of justice require or, in criminal cases, whenever an accused is a witness, if he so requests.*" [Emphasis added.]

 The purpose for these Rules is a prophylactic one. It is to prevent the jury from being exposed to information more prejudicial than probative by providing that such rulings on admissibility be held outside the hearing of the jury. Rule 103(c) and Rule 104(c), N.D.R.Ev., are identical to Rules 103(c) and 104(c), respectively, of the Federal Rules of Evidence. Rule 104(c) vests broad discretion in the trial judge to conduct preliminary hearings outside the hearing of the jury. 1 Weinstein's Evidence ¶ 104(09) The Advisory Committee Note to Rule 104(c) of the Federal Rules of Evidence states:

> "Much evidence on preliminary questions though not relevant to jury issues, may be heard by the jury with no adverse effect. A great deal must be left to the discretion of the judge who will act as the interests of justice require. . . ."

Neither Rule 103(c) nor 104(c), N.D.R.Ev., speaks in terms of the time at which a preliminary ruling should be made. Questions as to the proper time for a ruling on a preliminary question should be left to the discretion of the trial judge. We cannot say that it was an abuse of discretion for the trial judge to deny Boushee's request for a ruling on the admissibility of his prior conviction before he chose to take the stand.[3] We find no prejudicial error in denying Boushee's request to make such a ruling.

### VII.

### MOTION FOR JUDGMENT OF ACQUITTAL

The seventh and final issue raised on appeal is that the trial court erred in deny-

ing Boushee's motion for acquittal. There were sufficient facts available to allow reasonable men to differ and it was proper for the court to submit the case to the jury. The better course, and the one followed in this case, is to allow the case to be determined by a jury verdict. *See Starr v. Morsette,* 236 N.W.2d 183, 189 (N.D.1975).

In conclusion, since we find no prejudicial error in the trial court's decision to deny any of Boushee's motions, the judgment of conviction is affirmed.

Judgment affirmed.

ERICKSTAD, C. J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.

---

**3.** However, it may be a better policy to make a ruling on the admissibility of a prior conviction, where the witness is the accused, at some time prior to his decision to take the stand because it does have an impact on the trial strategy involved in making the decision to take the stand.